## LORING *v.* FRUE.

1. Judgment upon nonsuit was rendered, with leave to move to set it aside. More than two years thereafter, the court heard the respective parties and granted the motion. *Held,* that the action of the court presented no question upon which a jury could pass, and that no exception thereto having been taken it cannot be reviewed here.

2. Certain shares of stock were sold by the agent of a corporation, and the moneys derived therefrom forwarded to its treasurer, who, in his official capacity, received and applied them to its uses. The agent subsequently claimed that a part of the shares was his individual property. . *Held,* that, if he is entitled to recover therefor, his remedy is against the corporation. ·

3. The treasurer to whom a stock subscription is paid is not bound to issue the requisite certificates, nor is he personally liable to the party who, for the money so paid, is entitled to them.

ERROR to the Circuit Court of the United States for the Eastern District of Michigan.

The facts are stated in the opinion of the court.

*Mr. C. I. Walker* and *Mr. George F. Edmunds* for the plaintiff in error.

*Mr. Samuel T. Douglass* and *Mr. John H. Bissell* for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The declaration in this case contains only the common counts. The plea was the general issue, which a jury was sworn to try. After evidence had been offered by Frue, the plaintiff below, he elected to take a nonsuit, whereupon the following order was made, June 11, 1874 : " It is therefore ordered judgment of nonsuit, and that the defendant recover of the said plaintiff his costs of this suit to be taxed, and leave is granted to said plaintiff to move to set aside this judgment."

Oct. 31, 1876, the court made an order in the following terms : " The motion to set aside the nonsuit heretofore entered in this cause again coming on to be heard, the same having been heard in part on the thirtieth day of October, instant, the arguments of counsel for the respective parties are concluded and the matter submitted, and the same having been duly considered by the court, it is now ordered that said nonsuit be, and the same is hereby, set aside, with leave to put

the case on the docket for trial at the next ensuing November term of this court."

On the 26th of December thereafter there appears an entry of an order overruling, after argument of counsel on both sides, a motion to set aside the order last cited. The case then went to trial, and the defendant again sought, by way of a prayer for instructions, to raise the question of the validity of the order setting aside the nonsuit.

The same point is much urged here by Loring, the defendant below, against whom judgment was given, and he assigns for error the action of the court in that respect.

It is quite obvious that no such question could be submitted to the jury, and that a prayer for instructions thereon was properly overruled.

Whether the court had the power to set aside this nonsuit more than two years after the judgment had been rendered is a very interesting question, the determination of which would depend somewhat on facts that are not in this record. Although counsel was present during the entire proceedings, no bill of exceptions was taken, so as to bring before us the grounds of either motion or the facts on which it was supported.

When a case is heard in an appellate court on a writ of error, it is a principle equally well settled in law and necessary in the administration of justice, that only such errors as are plainly made to appear can be grounds of reversal, and that every presumption consistent with the record is to be made in favor of the action of the inferior court.

It is not inconsistent with anything in this record that at the term when the nonsuit was granted the motion to set it aside was made, and then continued by regular orders from term to term until it was decided. In such case there can be no question of the power of the court to make the order. So it may have been stipulated that, until the chancery suit between the same parties which is found in the record should be decided, the action was to remain in court, and then come up on the motion to set aside the nonsuit. This also would have given the court the right to set it aside.

As the plaintiff in error, although present by counsel when

the objectionable order was made, and the subsequent motion to set it aside was heard, took no bill of exceptions to negative the presumptions we have mentioned, as well as others which might be suggested, we must presume that the action of the court was in accordance with law. The assignments of error based on the order setting aside the nonsuit are not well taken.

The record contains a very full bill of exceptions professing to embody all the evidence submitted on the trial. The errors assigned relate to the instructions of the court, and to its refusal to grant the prayer of the plaintiff in error for instructions.

The evidence consisted wholly of that of the plaintiff and his agent, Palmer, and some letters and correspondence which they introduced.

It appears that the transactions on which the claim is founded originated in the purchase of mineral lands in Michigan, the organization of two joint-stock companies as owners of them, and in speculations in the sale of the shares of these corporations. Frue resided in that State, and, having been engaged in mining there, was supposed to be skilled in the discovery of its mineral products. Palmer and Loring lived in Boston. He, they, and one or two other persons determined, after some preliminary negotiations, to purchase lands which they supposed contained mineral, and to organize two or more corporations. They accordingly made the purchase and organized two corporations, — one called the Ossipee and the other the Kearsarge. The usual process of a large capital stock divided into a great many shares was resorted to, and then the sale of them was in order.

The testimony tends to prove that, in some connection with the business of these companies, Loring, who was the president, treasurer, and active managing agent of them in Boston, received from Frue about $114,000, and the controversy turns upon the question whether he, in his official capacity, received it as Frue's share of the money necessary to pay for the lands, or whether it was money sent to purchase stock for a failure to deliver which he would be liable for money had and received to Frue's use.

The first item to which attention is called is one of $73,000. Frue, in his testimony, states that it was determined by the

original promoters of the venture to sell a large amount of stock, and that he accordingly sold two thousand shares of the Ossipee at $11.50 per share, amounting to $23,000, and five thousand shares of the Kearsarge at $10 per share, making $50,000, which sums he forwarded to Loring. Before the jury he claimed to recover $9,276, on the ground that of the stock sold by him that amount belonged to him personally.

It is not easy to see by what process of reasoning this result is arrived at. But it is clear that in forwarding the stock to Frue, which he sold for $73,000, Loring was acting as president and treasurer of the associations, whether it was before or after their organization. His own evidence on that subject is, that he received the stock from Loring, and accounted therefor with him as president. When asked why he sent forward all the money instead of retaining what he now claims was his individual property, Frue said that he wanted to keep Loring in ample funds. Palmer also testified that Loring was president, director, and financial manager of the companies, and as such paid for the lands out of the funds placed in his hands, and that the lands were conveyed to the corporations.

We are of opinion that the plaintiff himself makes out beyond dispute that he received these shares of stock from Loring as president of the associations, to be sold on their account; that he so sold them, and remitted the money to Loring as treasurer. It is clear that Loring is not personally liable therefor, and that if Frue has the right to recover part of this $73,000, it is by action against the corporations. The refusal of the court to so instruct the jury was error.

The next item which Frue claims is $15,889.32, which he says in his testimony was sent to Loring to pay for stock at prices per share which had been previously fixed by the members of the companies; and he insists that this being a transaction between him and Loring, the latter, having failed to deliver the stock, is personally liable for the money.

But it is quite clear from the evidence that this sum was part of the capital stock of the companies for which Frue was liable, either by the original terms of their organization, or by reason of assessments made on him as a stockholder. He was certainly entitled to his certificates of shares, if he never

received them. And if the corporations or their officers had otherwise disposed of them, so that they could not be issued to him, the corporations, and perhaps the officers, would in a proper action be liable for conversion. But the money sent to Loring in these cases was sent to the corporations. It came to him properly as their treasurer, and they, not he, incurred the obligation to issue and deliver the certificates. It is true the court told the jury that if they believed this, they must find for the defendant. But this was misleading, for while Frue thought that by sending the money he had a personal claim on Loring for the shares, and swore to this belief, the facts to which he testified showed that he had no such claim. The jury should have been told so, instead of being left to act on his sworn opinion of the legal result of the transaction.

The remaining item of $25,401.08 is made up of drafts sent by Frue, Dec. 31, 1866, to Palmer, his agent at Boston, payable to his order, with instructions to apply it on the purchase of Sections 24 and Penn. Palmer testifies that he indorsed and delivered the drafts to Loring, and that the money was used for other purposes by Palmer and Loring, though afterwards the same amount was invested for Frue in Torch Lake, which was the same as Penn and Section 24.

We are not prepared to say that the court was in error in refusing the instructions prayed by Loring's counsel on this point, or that there was any manifest error of law in the charge of the court on that matter.

But we are of opinion that the whole charge was vague and misleading in this matter as in others, as it made on the jury the impression that the opinions of Frue and Palmer, in their mode of looking at these transactions, were competent evidence, and it failed to give due effect to the simple and undoubted facts of the case. For these reasons there was no fair trial. The judgment of the Circuit Court must be reversed, with directions to set aside the verdict of the jury and grant a new trial; and it is

*So ordered.*