## GEYSER–MARION GOLD–MIN. CO. v. STARK.

(Circuit Court of Appeals, Eighth Circuit. March 11, 1901.)

No. 1,404.

1. CORPORATION MUST USE DILIGENCE TO MAKE AUTHORIZED AND PREVENT UNAUTHORIZED TRANSFERS OF STOCKS.
    It is the duty of every corporation to use reasonable diligence in each case to ascertain whether or not a transfer of stock requested is duly authorized by the former owner, to make transfers so authorized, and to

prevent those unauthorized; and for every breach of this duty it is liable to the injured party for the damage it inflicts.

2. **TRUSTEE PRESUMPTIVELY HAS NO POWER OF SALE.**

The legal presumption is that a trustee has no power to sell or transfer the subject of his trust.

3. **RECORD OF TITLE IN TRUSTEE—NOTICE.**

A corporate record and certificate of ownership of stock by A. B., trustee, is notice to the corporation that he holds it, without the power of disposition, for some cestui que trust.

4. **TRANSFER WITHOUT INQUIRY FOR ASSENT OF CESTUI QUE TRUST NEGLIGENCE.**

It is actionable negligence for the corporation to cancel the certificate and transfer the stock on the signature of the trustee to the assignment, without any inquiry for the cestui que trust, or for his assent to the transfer.

5. **LOCAL CUSTOM VIOLATIVE OF LAW INOPERATIVE.**

A local custom of dealers in a place where a sale is made, which violates a well-established principle of law, and changes the nature and obligations of the relation of two parties to each other, is inoperative unless known and assented to by both.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Utah.

This was a suit in equity brought by the appellee, Charles B. Stark, against the appellant, the Geyser-Marion Gold-Mining Company, a corporation of the state of Utah, to compel it to either reinstate upon its records the registry of his ownership of 3,000 shares of its stock, or to pay to him the value of that stock, which the appellee alleged the corporation had negligently permitted to be transferred upon its records to third parties. The appellant answered that the stock in question stood upon its books in the name of Felix J. Stark, trustee; that, pursuant to a custom which existed in Salt Lake City, this trustee sold and assigned the stock to third parties, who surrendered the certificates to the corporation, and thereupon the appellant issued new certificates of stock to these purchasers, and registered the ownership thereof in their names, without any notice that the complainant was interested therein. At the close of the hearing these facts were established: Charles B. Stark was a resident of St. Louis, Mo. Felix J. Stark, his brother, resided in Salt Lake City, in the state of Utah. In 1897 and 1898 Felix J. Stark bought for Charles B. Stark 3,000 shares of the stock of the appellant. A certificate for 1,000 of these shares was issued in the name of Charles B. Stark, who subsequently assigned it in blank, or signed a power of attorney authorizing Felix J. Stark to transfer it, and delivered the certificate to him. Thereupon Felix surrendered the certificate for these 1,000 shares to the corporation, and at his request the corporation issued a new certificate for these shares to Felix J. Stark, trustee, and so recorded the ownership upon its books. The certificates for the remaining 2,000 shares, when purchased, were assigned either in blank or to Felix J. Stark, and were delivered to him. He surrendered them to the corporation, and at his request the corporation canceled them, and issued and delivered to Felix J. Stark, trustee, new certificates for these 2,000 shares, and recorded the ownership thereof in his name as trustee upon its books. Felix J. Stark had no beneficial interest in any of this stock. The appellee, Charles B. Stark, was the equitable and beneficial owner thereof, and Felix J. Stark held it as his trustee. The appellee pursued the course indicated by these facts for the purpose of enabling him to direct his trustee to sell and transfer his stock at any time by wire, without waiting to forward the certificates from St. Louis. The appellee never did authorize his trustee, Felix, to sell or transfer the stock. But Felix J. Stark sold and assigned this stock, by means of the signature, "Felix J. Stark, Trustee," to third parties, and appropriated the proceeds of the sale to his own use, without the knowledge of the appellee. Thereupon the purchasers presented the certificates for these 3,000 shares of stock, with the assignments thereof, signed by Felix J. Stark, trustee, and surrendered them to the corporation. The

mining company accepted the surrender, canceled the certificates, issued new certificates for like amounts to these purchasers, canceled the registry in its books of the ownership of this stock by Felix J. Stark, trustee, and recorded its ownership by the purchasers. At the time of these transactions Felix J. Stark was a broker, and a member of the Stock Exchange of Salt Lake City, and it was a custom in that city for brokers to carry in their names, as trustees, stock belonging to third parties, which was extensively bought and sold without any actual transfer of the certificates of stock; the brokers holding them in their possession and in their names as trustees, and accounting to the respective purchasers. It was also the custom for such brokers to transfer and assign the stock by signing the assignments with their names as trustees, without the signatures of the cestuis que trustent. The appellant had no knowledge of the beneficial ownership of this stock by the appellee, and no actual notice of his interest in it. Upon this state of facts the court below found that the appellee was entitled to recover from the mining company the damages which he had sustained by the transfer and loss of his stock. It found these damages to be $2,851.22, and entered a decree accordingly. The mining company has appealed from this decree.

J. E. Frick (H. C. Edwards, on the brief), for appellant.

John W. Judd and Harrison O. Shepard (Charles B. Stark, Richard B. Shepard and Allen T. Sanford, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Corporations issue certificates of the ownership of their stock. They condition the rights of their stockholders to vote, to participate in their management, and to receive dividends upon their stock, upon a registry of their ownership of their shares in the corporate books and upon these certificates. They make the certificates and keep the registries, and they thereby assume an obligation to each stockholder to use reasonable diligence to certify, and to make their records declare the truth. No man can be lawfully deprived of his property without his consent except by due process of law, and, if he once becomes the owner of stock in a corporation, that association cannot recklessly deprive him of that ownership, and confer it upon another, without liability for the damage it causes. It is bound to use reasonable diligence in every case to ascertain whether or not a transfer of stock requested is duly authorized by the former owner, to make those transfers that are so authorized, and to prevent those that are unauthorized; and for every breach of this obligation it is legally liable to the parties injured for the damage it thus inflicts. Telegraph Co. v. Davenport, 97 U. S. 369, 371, 372, 24 L. Ed. 1047; Cook, Stock, Stockh. & Corp. Law, § 327; St. Romes v. Cotton-Press Co., 127 U. S. 614, 8 Sup. Ct. 1335, 32 L. Ed. 289; Loring v. Salisbury Mills, 125 Mass. 138; Same v. Frue, 104 U. S. 223, 26 L. Ed. 713; Salisbury Mills v. Townsend, 109 Mass. 115; Pratt v. Manufacturing Co., 123 Mass. 110; Pennsylvania R. Co.'s Appeal, 86 Pa. 80.

At the time of the transfer of this stock of which complaint is here made, the appellee was its equitable owner; and Felix J. Stark, his brother, held the title to it in trust for his benefit, with no authority to sell or to transfer it. The certificates which represented it and the corporate books alike declared, not that Felix J. Stark, but that Felix J. Stark, trustee, held the title to it. Felix violated his trust.

He signed the name "Felix J. Stark, Trustee," on the assignments of the certificates without any authority from his cestui que trust to either sell or assign them, and he delivered them to the purchasers. For these acts the corporation was not liable. After their performance the stock still stood of record in the name of Felix J. Stark, trustee; and the appellee, the cestui que trust, still had the right to direct the action of the trustee, to dictate his vote in the management of the affairs of the corporation, to receive the dividends on the stock, and to control its disposition. But when the corporation accepted unauthorized assignments of the trustee, canceled the certificates, issued new certificates for the same shares of stock, which declared the purchasers to be their owners, and recorded the ownership of this stock upon its corporate books in the purchasers, instead of in Felix J. Stark, trustee, the appellee's stock was gone, and he was deprived of all his legal and equitable rights therein. Was the corporation liable to him for this loss? Counsel for the appellant maintain that this question should be answered in the negative (1) because the addition of the word "trustee" to the name Felix J. Stark gave the corporation no notice that this stock was held in trust for any one, and imposed upon it no duty to inquire concerning the cestui que trust; (2) because the appellee is estopped by the fact that before the title of the stock was recorded in Felix J. Stark, trustee, he permitted assignments thereof to be made to Felix individually, and gave him possession and control of the certificates; (3) because it was the custom of stockbrokers in Salt Lake City to hold the title to stock in their names as trustees, and to assign and transfer it without the consent of their cestuis que trustent, and (4) because the stock had been assigned to the purchasers by Felix J. Stark, trustee, and this assignment had vested in them a perfect title, so that the subsequent transfer thereof on the corporate books, the surrender of the old certificates, and the issue of new certificates to the purchasers, inflicted no injury upon the appellee.

But the word "trustee" means something. It is a warning and declaration to every one who reads it (1) that the person so named is not the owner of the property to which it relates; (2) that he holds it for the use and benefit of another; and (3) that he has no right or power to sell or dispose of it without the assent of his cestui que trust. It denies the equitable ownership and beneficial interest of the party to whom it is applied, and asserts that he holds it in a representative capacity. It signifies the opposite of the word "owner," and means that, while the party called "trustee" has the naked legal title, he has no beneficial right, title, or interest in the property. No one who should read in stock certificates or in corporate records that one share was owned by Felix J. Stark, while another was owned by Felix J. Stark, trustee, would fail to understand that he held the former for himself, and the latter for another. Not only this, but the term "trustee" is a term of administration, and not of sale. A trustee ordinarily holds the property intrusted to his charge to collect the rents, issues, dividends, or profits thereof, and to apply them to some specified use. Brokers, administrators, and executors frequently have the power to dispose of the property intrusted to their

106 F.—36

charge. Trustees commonly have no such power. Hence the legal presumption is that a trustee has no power to sell or convey the property which he holds in his fiduciary capacity, and the fact that he holds it as trustee is a warning and a declaration to all the world that he is without the power of disposition, unless that power is specifically given by the instrument creating the trust, or by the assent of those whom he represents. The legal presumption is that a trustee has no power of sale. Jaudon v. Bank, 13 Fed. Cas. 376, 379 (No. 7,230); Gaston v. Bank, 29 N. J. Eq. 98, 103; Duncan v. Jaudon, 15 Wall. 165, 175, 21 L. Ed. 142; Gerard v. McCormick, 130 N. Y. 261, 267, 29 N. E. 115, 14 L. R. A. 234; Allen v. Bank, 120 U. S. 20, 32, 7 Sup. Ct. 460, 30 L. Ed. 573. When, therefore, the records of this corporation and the certificates disclosed the fact that this stock was held by Felix J. Stark, trustee, and these certificates were presented for surrender and cancellation, and for the transfer of the stock to third parties, without the authority or assent of the cestui que trust, this corporation could not escape notice that Felix held it, not for himself, but for another, and that he had no authority to assign it.

It is said, however, that the term "trustee" gave no indication of the name of the equitable owner, and that this fact relieved the corporation from the discharge of its duty. This corporation was bound to exercise reasonable diligence to ascertain whether or not the equitable owner of this stock had authorized its transfer and to prevent its cancellation and its loss by him if he had given no such authority. The warning and declaration which the word "trustee" bore to this corporation that Felix J. Stark was not the owner, that he held it for another, that he had no power to assign it, were certainly sufficient to put the company upon inquiry for the cestui que trust, and for his assent to the surrender and destruction of the certificates. No reasonable man, in the presence of such a warning, and in the honest discharge of such a duty, would fail to investigate; and notice sufficient to put a man of reasonable prudence and intelligence upon inquiry is notice of all the facts which a diligent investigation would develop, or is evidence from which knowledge of those facts may be inferred and found. The mining company asked no questions, made no inquiry, canceled and surrendered the stock of the appellee upon the unauthorized assignments, and issued certificates and made a record of its ownership by others. This was neither the exercise of reasonable diligence, nor of any diligence, to ascertain the beneficial owner of this stock, and to prevent its transfer without his consent; and it was a clear breach of the obligation of the corporation to discharge this duty. The old excuse for this dereliction that the word "trustee" pointed to no one but the trustee himself of whom inquiry could have been made, and that such an inquiry would have been idle, because he who would violate his trust would make false answers, is again presented. Its futility has been often shown, and perhaps nowhere better than by Sir John Romilly, master of the rolls, in Jones v. Williams, 24 Beav. 62, where he said:

"With respect to the argument that it was unnecessary to make any inquiry, because it must have led to no results, I think it impossible to admit the validity

of this excuse. I concur in the doctrine of Jones v. Smit... 1 ... ... ... a false answer or a reasonable answer given to an inquiry ... ... ... with the necessity of further inquiry; but I think it impossible ... ... to come to the conclusion that a false answer would have been give... ... would have precluded the necessity of further inquiry. A more ... do... trine could not be laid down, nor one involving a more unsati... inquiry, namely, a hypothetical inquiry as to what A. would h ve sai... if B. had said something other than what he did say."

It is no excuse for the failure to make any inquiry that such an investigation, if made, might have failed to develop the truth. Shaw v. Spencer, 100 Mass. 382, 390.

The suggestion is made that the bookkeeper of the mining company testified that he remembered that, at the time one lot of stock was transferred to Felix J. Stark as trustee, Felix told him that he was the owner of it, and that it was put in his name as trustee, and in smaller certificates, for the convenience of selling it. But this evidence clearly shows that this statement was not made at the time when the stock was transferred from Stark, trustee, to the purchasers, and that it was not made in response to any inquiry made by the corporation for the cestui que trust, in the discharge of the duty then incumbent upon it. The result is that the appellant was guilty of negligence in canceling the certificates of the appellee's stock, and certifying and recording its ownership by others, without making any inquiry to ascertain for whom the trustee held it, and whether or not the cestui que trust had authorized its disposition. A corporate record and certificate of ownership of stock by A. B., trustee, is notice to the corporation that he holds it, without the power of disposition, for some cestui que trust; and it is actionable negligence for the corporation to cancel the certificate and transfer the stock on the signature of the trustee to the assignment, without any inquiry for the cestui que trust, or for his assent to the transfer. Shaw v. Spencer, 100 Mass. 382, 389; Sturtevant v. Jaques, 14 Allen, 523; Fisher v. Brown, 104 Mass. 259, 261; Duncan v. Jaudon, 15 Wall. 165, 176, 21 L. Ed. 142; Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Welles v. Larrabee (C. C.) 36 Fed. 866, 870, 871, 2 L. R. A. 471; Bank v. Parson, 54 Minn. 56, 63, 55 N. W. 825; Gaston v. Bank, 29 N. J. Eq. 98, 102; Bundy v. Town of Monticello, 84 Ind. 119, 130; Gerard v. McCormick, 130 N. Y. 261, 267, 29 N. E. 115, 14 L. R. A. 234; Bailey v. Finch, L. R. 7 Q. B. 34; Pannell v. Hurley, 2 Colly. 241; Duggan v. Agency Co., 30 Am. & Eng. Corp. Cas. 89, 95; Sweeny v. Bank, 12 Can. Sup. Ct. 661, 668; Bank v. Lange, 51 Md. 138, 144; Swift v. Williams, 68 Md. 236, 256, 11 Atl. 835; Marbury v. Ehlen, 72 Md. 206, 216, 19 Atl. 648; Lowell, Stocks, § 69; Mor. Priv. Corp. §§ 181, 184; Cook, Stock, Stockh. & Corp. Law, §§ 325, 327. There are three early decisions which repudiate this declaration of the law. They are Brewster v. Sime, 42 Cal. 139, 145 (decided in 1871); Thompson v. Toland, 48 Cal. 99, 113 (decided in 1874); and Albert v. Mayor, etc., 2 Md. 159, 171 (a decision rendered in 1852, which has been overruled by the supreme court of Maryland in Marbury v. Ehlen, 72 Md. 206, 216, 19 Atl. 648). But these decisions have not been followed, and the reason of the case, the later decisions of the courts, and the declarations

of the text-books have united to make the proposition we have announced the established law of the land.

It is contended, however, that the appellee is estopped from insisting upon his claim to recover in this case, because before his stock was placed in the name of Felix J. Stark, trustee, the former certificates which represented it were, by assignments in blank by powers of attorney, and by delivery of possession, placed under the absolute control of Felix J. Stark, who might then have sold and assigned them without notice to the corporation of the trust relation. The answer is that he did not sell and transfer them when he appeared to be the owner and to have the control of them. While they stood in his name as owner, or while the certificates were assigned in blank, and he had the power to insert the name of the assignee, he appeared to be the owner, and was thereby given apparent authority to sell and dispose of the stock. If he had used this appearance of power, the appellee would have been estopped to deny that the power existed, because he caused that power to appear to be granted to his brother. He did not use it, but caused notice to be spread upon the records of this corporation, and to be inserted in the certificates, that he held the title to this stock, not for himself, but as trustee for another. When this had been done, the corporation had received its notice, and it was too late for it to rely upon an appearance that had been removed. Felix J. Stark had raised the red flag. He had notified the corporation that he was not the owner, and had not the power to dispose of the stock without the assent of his cestui que trust. For this reason the appellee was not estopped from enforcing his rights and recovering the value of his stock.

Another objection to the decree for the appellee is that Felix J. Stark was a broker in Salt Lake City, and that it was an established custom among the brokers of that city to carry in their names as trustees the stock of third parties, and to assign and transfer it without the consent of their cestuis que trustent. There is no evidence that this custom was known to the appellee, who was a resident of the city of St. Louis. But there is another and a conclusive reason why it cannot deprive the appellee of his property in this case. It changes the nature—the essence—of the relation of trustee and cestui que trust. It gives to the trustee a power which that relation and the obligations which condition it deny, and for that reason it cannot obtain to destroy or change the legal rights of the parties. A local custom which relates simply to the mode of the performance of a contract or to its interpretation, if established and known to the parties, may be enforced. But one which makes a substantial change in the rights and relations of the parties, and which violates a settled rule of law, binds no one who does not know and assent to it. Irwin v. Williar, 110 U. S. 499, 515, 516, 4 Sup. Ct. 160, 28 L. Ed. 225; Allen v. Bank, 120 U. S. 20, 39, 7 Sup. Ct. 460, 30 L. Ed. 573; Robinson v. Mollett, L. R. 7 H. L. 802, 816, 828, 836; Barnard v. Kellogg, 10 Wall. 383, 19 L. Ed. 987; Shaw v. Spencer, 100 Mass. 382, 393; Lehman v. Marshall, 47 Ala. 362; Leuckhart v. Cooper, 3 Bing. N. C. 99; Baxter v. Sherman, 73 Minn. 434, 441, 76 N. W. 211; Lowell, Stocks, § 69.

Finally it is insisted that there can be no recovery in this case because Felix J. Stark, trustee, had assigned and delivered the certificates of stock to the purchasers, and they were lost to the appellee before the corporation took any action in the matter. In support of this contention our attention is drawn to section 330 of the Revised Statutes of Utah of 1898, which provides that the delivery of a stock certificate, together with a written transfer of the same, signed by the owner, to a bona fide purchaser or pledgee for value, shall be deemed a sufficient transfer of the title, as against any creditor of the transferror, and all other persons whatsoever. It is conceded that if, before the appellant acted, this stock had been so transferred, by the assignment and delivery of the certificates, that the title and ownership had passed beyond the reach of the appellee, there could have been no recovery against the corporation because it was liable for no loss which its negligence did not cause. The difficulty with the argument for the appellant here is that no such transfer of title had been effected. The certificates themselves bore the declaration that they were the property of Felix J. Stark, trustee. That assertion, as we have seen, was a warning and a statement that he was not the owner of them, and that he had not the power to dispose of them, and every purchaser who took them received them with notice of these facts. If the corporation had refused to accept the surrender of the certificates, to issue new certificates in their place to the purchasers, and to transfer the stock upon its records, the purchasers could have enforced no transfer, and would have acquired no rights by the possession and the assignments of the certificates. But the action of the corporation in canceling those certificates, in issuing others in their place, in certifying the ownership in third parties, and in transferring the title upon their records, destroyed the appellee's evidence of title, estopped the corporation from denying, as against innocent purchasers, that the new certificates belong to others than the appellee, and thus devested him of his property. Neither the act of the trustee nor of the purchasers could have deprived the appellee of his equitable ownership in this stock without the concurrent action of the corporation, and it cannot escape liability for that action. The decree below is affirmed.