Hoffheimer, J.
This action was originally brought by John C. Healy, trustee, against the Second National Bank, to recover twenty-three hundred and forty ($2,340) dollars and interest, the value of two registered bonds.
Mr. Healy had been appointed by the probate court trustee of one James Robinson, vice one Santmyer previously appointed by the same court, as trustee to succeed John F. Robinson and Charles M. Robinson (resigned), the original trustees under the will of John Robinson.
Santmyer was removed by said court for failure to file his account and for otherwise failing to- carry out his trust. The Am. eriean Bonding & Trust Company was surety on the bond of Santmyer.
*194 Mr. Healy, as trustee, failing to secure from Santmyer the trust property belonging to his cestui que trust, James Robinson, which it was claimed included United States bonds involved in this action, brought suit against the Second National Bank, evidently on the theory that said bank in purchasing these bonds standing in the name of Santmyer, trustee, did so with notice that they were trust funds, and that failing to exercise proper diligence in inquiring as to the trustee’s right to sell same, participated in Santmyer’s wrong and fraud, and therefore was under an implied promise to pay the money back.
A general demurrer to this petition was sustained by this court (William H. Jackson, J.) in a written opinion. The general demurrer to the amended petition was overruled by Rufus B. Smith, J.
This amended' petition differs from the original petition in particulars to be later noted.
The defendant, by answer, specifically deified the averments of the amended petition, and by way of second defense averred that the plaintiff had no interest as trustee or otherwise in the cause of action, and that the American Bonding & Trust Company had fully repaid and recompensed said trust estate for any and all loss suffered by reason of the alleged acts of said Santmyer.
John O. Healy, trustee, thereupon verified and filed a reply (February 3, 1908) as plaintiff, denying each and every allegation of new matter contained in the answer.
Under this state of the pleadings, and more than six years after the payment had been made by the bonding company) the cause was tried, and at the conclusion of the evidence for plaintiff the American Bonding & Trust Company asked leave to be substituted as plaintiff, which motion was resisted by defendant.
The defendant contended that inasmuch as it appeared that Healy, trustee, had no longer any interest (his claim as trustee having been fully paid by the bonding company), he could not recover, so that as to him the action was terminated, and it was claimed that the American Bonding & Trust Company could no longer be substituted in the place of Healy, trustee, because the statute of limitations had run against the bonding company, *195 even assuming that it had acquired some rights in this action. The bonding company contended that at the time it reimbursed Healy, trustee (eight or nine months after this suit was begun), it entered into a written agreement with Healy, trustee, whereby it claims it became immediately subrogated (conventional subrogation) to all of plaintiff’s rights, and that by virtue of this agreement it became entitled as assignee or transferee to continue this action for its benefit and under the original heading and style, or that it had the right at any time before judgment and in the discretion of the court, to be substituted as plaintiff, by virtue of Section 5012, Revised Statutes.
Section 5012, Revised Statutes (11261, General Code), is as follows:
"upon the disability of a party the court may allow the action to continue by or against his representative dr "successor in interest; and, upon any other transfer of interest the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted for him."
The question thus presented at the conclusion of plaintiff’s ease, was not without difficulty, and on request the hearing stood over to enable counsel to submit briefs, which was later done. Mindful, however, of the admonition of our Supreme Court with reference to the disposition of questions of such importance on motion, I concluded that the-matter ought not to be finally disposed of at such stage of the proceedings (Finch v. Finch, 10 O. S., 501), but that better practice probably required that objection be taken by pleadings, which was accordingly done.
Whether the court was in error on the question of practice is immaterial, as the objection was again taken by pleadings, as suggested by the court, and the point made at the conclusion of plaintiff’s case was again urged on the final submission of the case.
Substitution of the American Bonding Company having been allowed without prejudice to defendant’s rights, the question, therefore, would be not whether substitution was necessary (that is reflected by the evidence showing that Healy, trustee, had been wholly paid, and by the motion in and of itself), but *196 whether the court was justified in substituting a new party (the bonding company) in place of an original plaintiff, who sued in a representative capacity, more than six years after such representative powers, so far as the evidence shows, seems to have ceased, and more than six years after the rights of the new party seem to have accrued.
Assuming that the bonding company acquired rights from ITealy, trustee, and could pursue the bank in this action (a question not without serious doubt, since Healy’s claim against Santmyer was wholly extinguished), and assuming that the bonding company was not required to institute an action de novo, but had the right to continue this action by virtue of Section 5012, it is obvious that if the bonding company acquired, as claimed, all of Healy’s rights, whatever those rights may have been, that the bonding company became the real party in interest at the time it reimbursed Healy, trustee, and obtained the assignment. If it became the real party in interest at that time (and certainly it was no more so when it prayed substitution), then it devolved upon it, even though it may not have been compelled to begin that action, to prosecute same as such real party in interest. If this is not true, it is manifest that Section 4993, the terms of which are explicit, is rendered nugatory.
Section 4993, Revised Statutes (11241, General Code), provides:
“An action must be prosecuted in the name of the real party in interest, except as provided in sections forty-nine hundred and ninety-four and forty-nine hundred and ninety-five; but when a party asks that he may recover by virtue of an assignment, the right of set-off, counter-claim, and defense, as allowed by law, shall not be impaired.”
If the bonding company had the right to continue the original action, with Healy, trustee, as nominal plaintiff, and if it was to be permitted to substitute the bonding company as plaintiff, at any time before judgment, so long as the nominal plaintiff was still living, as the bonding company claims, then it is evident that Section 5012 has ingrafted an exception on Section 4993, or has entirely repealed it. But such construction, as has been well said in argument, is not to be favored, as proper construe *197 tion requires that effect be given to both sections if possible so to do.
Now if the American Bonding & Trust Company had the right to continue the original action, it is evident that it did not prosecute the action because the record itself shows that as late as February 3, 1908, although this was more than six years after Healy, trustee, had any interest as such trustee in the action, a reply loas certified and filed by Healy, trustee, as plaintiff, which reply denied the averments of the answer, which were to the effect that Healy, trustee, had no interest as trustee, or otherwise, in the action, and that the bonding company had fully recompensed the trust estate. True, it is contended by the bonding company in answer to defendant’s argument, that the reply was an active concealment by a mere nominal plaintiff of the bonding company’s interest, that the matters set up in the answer were not material, .and therefore could have been stricken out on motion, or were subject to demurrer; that the reply merely denied the averment that the trustee had no authority to bring the action, and denied in effect that a transfer .pending the action was a defense, relying, so it was argued, on Lowery v. Anderson, 57 O. S., 179. But in my opinion, the answer tendered a vital issue, which was that Healy, trustee, was not a real party in interest; that he had no interest in the suit; that his trust estate was fully restored.
While Lowery v. Anderson decided that a transfer pending the action was no defense, it did not decide the point thus raised, as appears from what the Supreme Court itself has said of that case. In Insurance Co. v. Carnahan, 63 O. S., 258-268, the court, speaking of Lowery v. Anderson, say:
"That case does not touch the point which arises here, viz.: that the actions were not begun or prosecuted in the name of the real party in interest.” [Italics mine.]
Lowery v. Anderson, therefore, is hardly authority for the proposition that a defendant may not set up by answer that plaintiff, in the utter absence of anything of record to show that a transfer had been made, had no interest in the action; that his trust estate was fully paid; that he was not a real party in interest.
*198 But it would seem to me that necessity for prosecution of the action by the real party in interest, immediately after the cause of action accrues or within the period allowed by law, is further determined by Insurance Co. v. Carnahan (supra). That case the bonding company earnestly insists, however, has no application to a case where (as here) the nominal plaintiff is not dead, and plaintiff insists that the court in the Carnahan case was simply considering a question of abatement or conditional abatement of the action due to death of a party solely, and that the court had in mind solely the revivor statutes relating to death of party. Attention to that ease will show, however, that the court had several questions before it, growing out of different actions, .and which actions involve a different state of facts.
In the first branch of the case, the court determined whether a proper revivor had been made in one action, where it seems suit had been brought by the partnership, in the partnership name, and after bringing the suit one of the partners died. The surviving partner revived the action, but the court held that the revivor had not been properly made.
In the second branch of the case the court had under consideration the effect of certain absolute assignments which had been made by the Carnahan firm, on the one hand, before suit was brought, .and on the other after suit was brought, and while all the partners were living, and the language of the court would indicate, that it was now considering the effect of such absolute assignments, made before and after suit brought, and with reference to the question, as to whether or not such actions were begun or prosecuted by the real party in interest.
After stating that under both these assignments, H. B. Claflin & Company became the real party in interest, that Carnahans were left simply as agents for the purposes of mere collection (that is, Carnahans had no interest in the action), the court say that:
“The only difference in the effect of them was that under the one first mentioned above, an action could not be legally begun and prosecuted except in the name of E. B. Claflin & Company, while under the second mentioned assignment the action should have been revived by substituting the assignee of the interest as plaintiff.
*199 “The case of Lowery v. Anderson, 57 O. S., 179, does not apply here. The point of that decision was that the transfer of interest pending the suit was no defense to the action, and that the assignee might be substituted for the original plaintiff. The case does not touch the point which arises here, viz., that the actions were not begun or prosecuted in the name of the real party in interest. We think that in this respect also there is reversible error in the proceedings of the court below.” [Italics mine.]
If, therefore, the -absolute assignment after suit begun, and while all the parties were living, leaving no interest in the Carnahan firm, necessitated “substituting the assignee of the interest as plaintiff,” it would appear that the right to prosecute the action passed to H. B. Claflin & Company immediately on said assignment, and that therefore it was its duty, if it desired to continue that action as assignee of the partnership, which action had then conditionally abated, to prosecute the same as real party in interest and be substituted as plaintiff.
If this is a correct interpretation of the Carnahan case, then precisely the same duty devolved on the bonding company after the trustee assigned all his interest, whatever that may have been, to said bonding company'. But even in the absence of the Carnahan ease we would find it difficult to justify a view that Section 5012, without in itself expressly excepting Section 1993; contemplated that where an absolute transfer had been made pending the action, the assignee could continue the original action under the original heading and style, and with the nominal plaintiff actually filing and verifying pleadings as though he were still the real party in interest, and without the real party in interest filing any petition in the nature of an intervening petition, or in fact, any pleading of any kind whatsoever, to indicate that it, as real party in interest, was prosecuting the suit. If such right was conferred by Section 5012, the anomaly results that the real party in interest may not only passively conceal his connection with the action, until at some time prior to judgment he chooses to reveal it, or the nominal plaintiff (as was done here), in reliance on Lowery v. Anderson (which, as we have seen, does not decide the point of prosecution by the real party in interest), may choose to actively deny it for him, even where *200 as here the issue is directly and squarely raised by a proper pleading.
That such is probably .not the law would seem to be further indicated by Railroad v. Falk, 62 O. S., 297, in which case it will be noticed that although the plaintiff had not parted with his entire interest, there was nevertheless an intervening petition, which would seem to be in accord with the view taken in Insurance Co. v. Carnahan.
If then, when substitution was asked for, it appear that the statute of limitations had run against the bonding company, then substitution could not be properly made. In other words, if when substitution was asked, the statute of limitations had run, substitution could not relate back, and so as to avoid the bar, unless by virtue of some special provision.
In Lilly v. Tolbin, 103 Mo., 477, cited by plaintiff, it appears that leave was given to substitute in place of the incorporated society, and it was held that this was merely substituting the proper for the improperly named party, and- such amendment was held to relate back to the commencement of the action. The court, as will be observed on reading the case, relied for the ruling on Ludwig v. Insurance Co., where it was held that substituting the party having the legal right to sue, instead of one improperly named as plaintiff, was not the commencement of a new action. Of course, no such claim could be made here, as under the pleadings in this case it affirmatively appears of record, by verified reply, that up to the time of substitution, Iiealy, trustee, was the real party in interest of record.
In Burton v. Insurance Co., 26 O. S., 467, an error was made in the summons and amendment was allowed, and this was held to have been properly allowed because of Section 137 of the code, and because the contract sued on itself contemplated the amendment (Welch, J.).
On the other hand, and directly opposed to the contention of plaintiff, and to Railway Co. v. Jenkins (103 Ill., 588, and in which no section similar to our Section 4993 is involved), Cogdell, Assignee, v. Exum, 69 N. C., 464, holds:
“An amendment by which the assignee was made a plaintiff more than two years after his appointment did not have the effect *201 to relate back and make him tbe plaintiff ab initio, and thereby defeat the statute of limitations."
The bonding company’s right of action, if any, having accrued when the transfer was made, we must determine whether the six years’ statute, Section 4981 (General Code, 11222) or whether the ten years’ statute, Section 4985 (General Code, 11227) is applicable.
Now, as this is not an action asking for subrogation, or to compel subrogation, or to be subrogated to particular securities, or to a particular judgment, plaintiff itself contending (see plaintiff’s brief, p. 96) that subrogation took place when the money was paid and agreement executed, as by conventional subrogation, cases such as Neal v. Nash, 23 O. S., 483; Zuellig v. Hammerlie, 60 O. S., 27, which indicate the ten years’ statute, are certainly not in point. The theory of this action being as stated at the outset, an attempt to recover from the bank on its implied promise as co-trustee, it would appear that the six years’ statute is pertinent. Poe v. Dixon, 60 O. S., 124; Neilson v. Churchill & Fry, 16 O. S., 553.
The bonding company’s right of action having accrued August 6, 1901, it follows that when leave to substitute was asked and given, without prejudice to defendant’s rights, the statute of limitations had fully and completely run, and the action was therefore barred.
If this conclusion is correct, it disposes of the case. But even if it be determined that the court is in error on this proposition, there are other considerations which prevent recovery.
The amended petition in this case differs from the original petition in this, that it alleges that the bank had actual knowledge that Santmyer when he sold said bonds intended to commit a breach of trust, and that with such Imoiuleclge, the said bank at the time of such sale placed the proceeds thereof to the individual credit of Santmyer on its books, and thereafter allowed him to draw out the same for his individual purposes. It is apparent, therefore, that the amended petition relies on actual knowledge of the bank that when Santmyer sold the bonds he intended, to commit a breach of the trust, and that with such knowledge the bank placed the proceeds to his individual account and permitted *202 Santmyer with this knowledge to draw out the proceeds on his individual check.
Now there was no evidence to show actual knowledge on the part of the bank, when it bought the bonds, that Santmyer intended to commit a breach of trust, and there was no evidence to show that the bank actually knew at the time it bought the bonds and deposited the proceeds, that Santmyer intended to check out the funds for his personal uses, and if, as was determined‘by'this court on the demurrer, there was no liability because of the purchase of the bonds, because of the duty that rested on Santmyer to convert the bonds into money, so as to have the funds in original shape for investment, when properly ordered, thé bank was surely not compelled, in the absence, as here, of actual knowledge, or of extrinsic evidence or circumstances that would put it on its guard that a breach of trust was about to be committed, to presume that he would use the proceeds of the bonds (after they were deposited) improperly or for purposes other than for the trust estate. Moreover, when the bank had deposited these proceeds to Santmyer’s account (there being no evidence of actual knowledge), the holder of Santmyer’s checks could have compelled the bank to honor the same. See Morse on Banks and Banking, 317.
If, then, it be conceded that the tendency of modern decisions is to enlarge the jurisdiction of the probate court with reference to particular matters delegated that court, and that the probate court has general equity power with reference to the subject-matter and as claimed for it (and which I am convinced it has), and it be held that where such direction is given by will, the probate court may direct the investment and reinvestment of trust funds, and it be conceded that plaintiff has shown by the preponderance of the evidence that both Santmyer and the bank bought and disposed of those identical bonds, we must still determine the precise directions of this testator, in order that the extent of Santmyer’s duty and powers when he originally bought, and later, when he sold the bonds, may be ascertained.
Now I do not think that the testator called upon the probate court to reinvest or exercise a power of supervision over reinvestment.
*203 The testator intended and directed that the probate court, for the reasons stated, should have the power to change the terms and conditions of the trust from time to time, but he did not intend to direct that the probate court was to change the investment or make or order -or supervise reinvestment of the trust fund from time to time. The language used is susceptible of no meaning other than that the probate court was to declare and fix the character of the investment prior to the investment being made by the trustee, and no other meaning can be arrived at, unless resort be had to unnecessary transposition. This court, through Judge Jackson, construing this provision, reached this conclusion also, and the court said:
“For it will be noted that the will provides that 'the investment of the trust fund and the conditions * * * are to be declared and fixed by the probate court. ’ This clearly means that the probate court is to determine and fix in advance of any investment what the character of such investment shall be.”
And the court further held, and this court wpuld feel bound by the ruling on demurrer, that the probate court did not so fix the investment merely because it confirmed the account, and that therefore, if the trustee originally bought the bonds without authority, the approval of the account, did not alter the right and duty of the trustee to convert the bonds unauthorizedly purchased by him into money, so as to have the trust fund in its original shape until the probate court should direct how it should be invested. And the court held that there could be no breach of trust on the part of the bank in buying these bonds, because it was the duty of the trustee to convert the bonds back into money, as above stated’. It is only necessary for me to add, that aside from the mere evidence as to confirmation, there was no evidence offered to show that the probate court actually “fixed the investment” at any time.
The plaintiff’s claim, therefore, resolves'itself to this, that the bonds standing in the name of Santmyer, trustee, was sufficient notice to the bank that Santmyer was not the owner, and that he had no power to sell, and that he was committing a breach of trust in the sale thereof, and so as to make it a party to the conversion when it bought the bonds and deposited the proceeds to *204 Santmyer’s account. But as the evidence adds nothing to the allegations of the original petition, therefore the precise claim has heretofore been determined adversely by this court on the demurrer.
It may be stated, further, that cases such as Duncan v. Jaundon, 15 Wall, 165, Gaston v. Bank, 29 N. Y. Eq., 26; Cohnfel v. Tanebaum, 176 N. Y., 126, are not applicable here because this case fails to reveal any, even the slightest evidence of bad faith. In the case cited a distinct advantage was obtained. In the ease at bar the evidence, if it shows anything, shows that the bank paid full value for the bonds, and if it enjoyed any profit it was such only as would ordinarily accrue to the dealer in such bonds.
Then, too, a number of cases are cited by 'the bonding company which involve questions arising on transfer of stock standing in the name of the trustee and it seems that, where stock is involved, a corporation because of the fiduciary relation to its stockholders, owes a duty to the stockholders to protect them in the transfer of stock, and particularly so where circumstances put them on notice that a breach of trust is about to be committed. This principle is elucidated in the leading case of Geyser-Marion Co. v. Stark, 106 Fed., 558, relied on by plaintiff, in which case also such extrinsic facts appear. The mere statement of the case shows, however, that it can have no application here. The same may be said of cases such as Shaw v. Spencer, 100 Mass., 382, and that case, for example, involved a pledge of stock held by a trustee, and where the court laid down the rule that it was the duty of the pledgee to inquire as to whether the pledgor had the power to pledge the stock for what the pledgee knew was a private or firm debt. The court clearly states that the pledge of trust property for a firm debt is prima facie unauthorized and unlawful, and that it is the duty of him who takes such security to ascertain whether the trustee has a right to give it. And again, that there is no reason for assuming that a trustee is authorized to pledge trust property for his own debt, all of which must be distinguished from a case where it was incumbent on him to convert these bonds into money so as to have the funds in shape for such investment as the will contemplated and directed. And further, where nothing appeared at the time of the sale and de *205 posit of proceeds to indicate, as a pledge for a private debt, in itself would indicate, that Santmyer intended to use the proceeds for his individual purposes, or to show had faith. It might further be noted that in Shaw v. Spencer, the court significantly and expressly refrains from laying down the rule that would apply had the case been one of sale.
That the bank under the circumstances in this case was not put on its guard or charged with notice, so as to render it liable as an involuntary or co-trustee, see Safe Deposit Co. v. Bank, 194 Pa. St., 334; Batchelder v. Bank, 188 Mass., 25; Jelke v. Goldsmith, Admr., 52 O. S., 499; Bank v. Village of Hyde Park, 101 Ill., 595.
It was urged that the bank’s duty was in some way accentuated, because the registered bonds, which it is charged with having bought, were not negotiable, and because the certificáte on the back of the bonds was in and of itself sufficient to put the bank on notice. Without deciding what the effect of such questions would be, or whether they would alter the conclusions reached herein, if this action were against the party who issued the bonds, I fail to see, in view of what has been said with reference to Santmyer’s right and duty to dispose of the investment which he had made unauthorizedly, and so obtain the money for proper investment, wherein the point thus raised can be of avail here.
Additional reasons are advanced by defendant in opposition to plaintiff’s claim, but in view of the foregoing consideration I think it sufficiently appears that there can be no recovery in this action by the bonding company, even if it be determined that substitution was properly made. In my opinion the judgment must be and the same is accordingly awarded the defendant.