MERCANTILE NATIONAL BANK OF CLEVELAND *vs.* J. BURTON PARSONS
et al.

Argued June 19, 1893.   Affirmed June 29, 1893.

**Bona Fide Purchaser after Reasonable Inquiry.**

The fact that a grantee in a deed is described as "trustee" is notice to one who takes title under the deed that the property is or may be held under a trust of some description, and puts him upon inquiry as to the existence and nature of the trust. But *held,* that in this case the defendant used due diligence in following up the inquiry, and was justified in purchasing upon the faith of the information received.

**Knowledge of a Stockholder is not Notice to the Corporation.**

To render the knowledge of the individual corporators the knowledge of the corporation it must be the knowledge of all of them.

Appeal by plaintiff, the Mercantile National Bank of Cleveland, Ohio, from an order of the District Court of Hennepin County, *Chas. M. Pond,* J., made February 10, 1893, denying its motion for a new trial.

On October 20, 1890, and between that date and January 17, 1891, the plaintiff loaned to the defendant the Lake Erie Tobacco Company, $17,500, and took its six notes therefor, indorsed by the defendant J. Burton Parsons. When the notes fell due, they were presented for payment, but were not paid. They were protested for nonpayment, and notice was given to Parsons. The plaintiff claimed to have security upon the Beard Block in Minneapolis for the payment of these notes, and brought this action to foreclose, and obtain a sale, and have the proceeds applied in payment of the debt. The defendant, the South Market Company, a Minnesota corporation, appeared in the action, and claimed to own the Beard Block property, and denied that plaintiff had any mortgage or lien thereon, and this was the question litigated. The following is a statement of the facts:

On July 19, 1888, the Cleveland Farming Company, an Ohio corporation, had a capital stock of $250,000 divided into shares of $100 each. About two hundred of these shares were owned by various undisclosed parties. The balance of its stock was owned by the defendants, Henry P. Crowell, Truman P. Handy and J. Burton Par-

sons, in about equal proportions. On that day this Farming Company exchanged with Loren Fletcher a large farm in Dakota, then owned by it, for the Beard Block, more accurately described as lots one, two, three, eight, nine and ten, in block one hundred and eleven (111) in Minneapolis. By consent of the officers of the Farming Company, the title to this Minneapolis property was conveyed by Fletcher, for convenience merely, to the defendant "Henry P. Crowell, *Trustee.*" This conveyance did not further disclose the trust, nor did it state the party or persons for whom Crowell was trustee. It was in fact intended to be in trust for the Farming Company. On September 18, 1888, Henry P. Crowell and wife executed a declaration of trust, stating that the title to this Beard Block standing in his name, as trustee, was owned by, and belonged in equal proportions to, Truman P. Handy, J. Burton Parsons, and himself, each owning a third; and that he would, on demand, convey to each a third interest therein. This instrument was never recorded. On December 14, 1888, Parsons exhibited this declaration of trust to the plaintiff, and gave it an instrument under his hand whereby he sold, assigned, and transferred to it his interest in the property, as security for all his indebtedness and the indebtedness of the Lake Erie Tobacco Company to the bank, and as security for any indebtedness of either of them thereafter accruing or at any time existing. Upon this instrument Crowell acknowledged notice thereof, and agreed to be governed accordingly. This instrument was not under seal, but was recorded in Hennepin County Registry of Deeds on December 19, 1888.

The defendant, Henry P. Crowell, with the consent of the Farming Company, on December 5, 1890, conveyed the entire property to the South Market Company, subject to two mortgages, for the aggregate sum of $75,000, which the Market Company assumed and agreed to pay. This Market Company was formed to buy this property, with a capital stock of $500,000. It gave to Henry P. Crowell, J. Burton Parsons, and Truman P. Handy $200,000 paid-up stock for this property, subject to the mortgages. It had notice before its purchase that Crowell held the title as trustee for the Farming Company, and procured the assent of the officers of that corporation to the sale. The Market Company had no notice or knowledge of the claim of the plaintiff until November, 1891. When the Mar-

ket Company purchased the property, it obtained an abstract of the title. When its officers heard of the claim of the bank in November, 1891, it had this abstract posted down to that date.

The issues were tried November 21, 1892. The court on December 5, 1892, made and filed findings of fact and conclusions of law, and ordered judgment that plaintiff is not entitled to any relief, and that the South Market Company is the owner in fee of the property, and that its title be quieted as against the plaintiff and each of the other defendants in the action.

The plaintiff made a case containing all the evidence given on the trial, and showing its exceptions to the rulings made in the progress of the trial, and on it as settled, and on the pleadings and findings, moved the court upon notice for a new trial, on the ground that the decision was not justified by the evidence and was contrary to law, and for errors in law occurring at the trial and excepted to by it. This motion was denied, and it appeals.

*Munn, Boyesen & Thygesen* and *J. M. Gilman,* for appellant.

This case stands the same as if the trust relation of Crowell to the property, as set forth in his written declaration of trust, had been actually embodied in the deed from Fletcher to him. It was a mere passive trust, and falls within 1878 G. S. ch. 43, § 5. Our statute of uses and trusts would vest in Parsons and Handy each the legal title to an undivided one-third of the Beard Block. *Thompson* v. *Conant,* 52 Minn. 208; *Woerz* v. *Rademacher,* 120 N. Y. 62.

But whether they took a legal or only an equitable title is immaterial. For an equitable interest may be mortgaged as well as a legal interest. *Randall* v. *Constans,* 33 Minn. 329; *Smith* v. *Glover,* 44 Minn. 2J0; *Wilson* v. *Fairchild,* 45 Minn. 203.

If the case did not fall within 1878 G. S. ch. 43, § 5, the Statute of Uses and Trusts, then it fell within section 14 of the same chapter, and within the principles laid down in the case of *Randall* v. *Constans, supra.* Our Statute of Uses and Trusts, 1878 G. S. ch. 43, is copied from the New York Statute, which materially changes the common law rule in many respects. The decisions of that State, therefore, upon this statute, carry great weight in this State; while the decisions of that State upon the subject of trusts, prior to the time that statute was enacted, and the decisions of other states

where such a statute does not obtain, have no application in this State. Where the consideration is furnished by one party, and -the title is taken in the name of another, by his direction, no trust results in favor of the party furnishing the consideration, and no such trust can be established by parol. Therefore Crowell did not hold the legal title in trust for the Cleveland Farming Company by virtue of any contract, expressed or implied, and no such relation could be established by parol evidence, nor did he take the title to the property under any such circumstances as would in law, charge him as constructive trustee for that company.

The South Market Company purchased the Beard Block property from H. P. Crowell, as trustee, with notice, as we claim, of plaintiff's lien thereon. The deed from Fletcher to Crowell designated the latter as "trustee," but did not designate the beneficiary. The fact that the deed designated Crowell as "trustee," was notice to every one that Crowell was not the owner of the property, but merely held the title in trust for some beneficiary. Any one purchasing from Crowell purchased with notice of his relation to the property. It was wholly immaterial whether the purchaser had notice or not of the beneficiary. The deed gave him notice that Crowell was not the real owner of the property. If he wished to get a good title, he should have inquired and ascertained who the beneficiary was. If he did not do this, he purchased at his own peril, and subject to the rights of the real beneficiary, whoever he might be, and the rights of those claiming under him. The designation of Crowell as "trustee" in the deed from Fletcher was notice to every one taking title from Crowell that he, Crowell, held the title as a trustee only, and could not pass the title of his beneficiary, and could not divest the latter or his assigns of their rights. *Duncan* v. *Jaudon*, 15 Wall. 165; *Railroad Company* v. *Durant*, 95 U. S. 576; *Shaw* v. *Spencer*, 100 Mass. 382; *Daughaday* v. *Paine*, 6 Minn. 443, (Gil. 304;) Wade, Notice, § 21.

The South Market Company is also chargeable with constructive notice of plaintiff's lien upon the property, upon this further ground: Parsons was in fact the beneficiary to the extent of a third interest in the Beard Block, and mortgaged his interest to the plaintiff, which mortgage recited the declaration of trust executed by Crowell, and Crowell indorsed thereon an acknowledgment of notice of the

mortgage. This mortgage and indorsement thereon by Crowell were duly recorded before the South Market Company purchased the property from Crowell. Crowell was in the chain of title, and this indorsement by him of notice of the mortgage to the plaintiff, and that he would be governed accordingly, and the reference to the declaration of trust in the mortgage, brought Parsons and the plaintiff into the chain of title so as to charge the South Market Company with notice of plaintiff's rights.

The Market Company was chargeable with actual or constructive notice of Parsons' rights and the rights of his assigns upon the further ground that Crowell, Handy, Parsons, and Benton were the promoters of the Market Company, and had actual knowledge of the plaintiff's claim or mortgage upon Parsons' interest in the property at the time of the incorporation of that company. That was sufficient to carry not only constructive but actual notice to the South Market Company of the rights and claims of Parsons and of his mortgagee in and to the property. *Daughaday* v. *Paine*, 6 Minn. 443, (Gil. 304;) *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417. Furthermore the South Market Company was not a purchaser for value. It paid nothing for the property, but simply issued certificates of its own stock. This did not constitute the South Market Company a purchaser for value.

*Benton, Roberts & Brown, Frank Healy,* and *A. T. Brewer,* for respondents.

The deed to Crowell from Fletcher was duly recorded; the declaration of trust was not, nor was its existence known to the South Market Company until about one year after it had acquired the title. These facts exhibit at once the impossibility of joining the two instruments for any purpose in the present suit. The Cleveland Farming Company, having placed the property in the name of Crowell, trustee, and having received the rents and profits during the time the title stood in his name, and having assented to the transfer to the South Market Company, cannot now be heard to question the title of the latter company.

We admit that the title to the Beard Block being in Crowell, trustee, any one buying of him was put upon inquiry to ascertain the trust. It would have been proper to inquire of the grantor, Fletcher.

Such inquiry would have shown that the Cleveland Farming Com pany paid for the property, and Crowell held it as trustee for that company. No other information could have been obtained from Fletcher. Inquiry might have been made of the Cleveland Farming Company. Its treasurer would have said, he for that company, was receiving the rents and profits. Crowell, the trustee, might have been inquired of, and would have said he held it for the stockholders of the Cleveland Farming Company. They all consented to the transfer. The records were searched, and they revealed no incumbrance from Fletcher except the $75,000 assumed, and no incumbrance whatever from Crowell. There were no other inquiries a prudent purchaser would have made. Reasonable and diligent inquiry would have shown simply that the consideration was paid by the Cleveland Farming Company, and applying the statute, the *status* of the title would have appeared to be, just what the court found it to be—absolutely in Crowell, for the purpose of selling and accounting for the proceeds to the Cleveland Farming Company.

The Market Company was a *bona fide* purchaser. It made all the inquiry that a reasonably prudent person would have made in regard to the trust indicated by the word "trustee" after Crowell's name in the deed from Fletcher.

Parsons not being in the chain of title, the record of the mortgage from him, was not notice to the South Market Company. *Kerfoot* v. *Cronin*, 105 Ill. 609; *Tarbell* v. *West*, 86 N. Y. 280; *Corbin* v. *Sullivan*, 47 Ind. 356; *Odle* v. *Odle*, 73 Mo. 289.

MITCHELL, J. While some of the findings of fact and conclusions of law of the trial court are probably erroneous, yet, in view of other facts found, these are not material, for, in our judgment, the whole case comes down to the single question whether the South Market Company was a purchaser in good faith, for value, without notice of plaintiff's mortgage.

The deed of the property from Fletcher having been taken in the name of Crowell with the knowledge and consent of the Cleveland Farming Company, no enforceable trust in its favor resulted from the fact that it paid the consideration. 1878 G. S. ch. 43, § 7.

It may be that the property would have been charged with a constructive trust in favor of the creditors of the company, but

that is a question between them and Crowell, which is not involved in this suit.

The fact that Crowell was designated "trustee" in the deed, without naming the beneficiary, or stating the nature of the trust, was, of course, insufficient to create any trust; and it can hardly be necessary to suggest that a trust could not be ingrafted on to this conveyance by parol evidence.    1878 G. S. ch. 41, § 10.

Hence the testimony of Crowell that he held the land in trust for the Farming Company was incompetent, and, even if admitted without objection, proved nothing.

Hence, under the deed from Fletcher, Crowell was, as against the Farming Company, the absolute owner of the property.  But we fail to see why his subsequent declaration of trust in favor of Parsons and Handy was not valid, and did not establish an enforceable trust as against him or any one purchasing from him with notice of it.   It is not important whether Crowell received any consideration for this declaration of trust.   He had a right to give away his property if he saw fit.  If he received no consideration, then it stood as an executed gift, and, as it seems to us, the trust became a mere passive one, which vested in Parsons and Handy each, the legal title to one undivided third of the property.

But whether they took a legal or only an equitable title is immaterial, for an equitable interest is mortgageable equally with a legal one.  Nor is it at all material that plaintiff did not know of this declaration of trust when it took its mortgage from Parsons.  If it took the mortgage without examining the title, the mortgage nevertheless covered whatever interest Parsons in fact had in the premises.   Hence plaintiff's mortgage from Parsons was valid as between the parties, and will take priority over the subsequent conveyance from Parsons to the Market Company, unless the latter is protected as a purchaser in good faith for value whose conveyance was first recorded.  The record of the mortgage from Parsons to plaintiff, without the record of the declaration of trust by Crowell in favor of Parsons, would not be constructive notice to any subsequent purchaser from Crowell, because not in the chain of title; and, as this declaration of trust was not recorded, the case comes down to the question whether the fact that Crowell was, in the deed from Fletcher, described as "trustee," was sufficient to put

the Market Company on inquiry, and, if so, whether the investiga-tion it made and the information it received was such as a reasonably prudent man would have acted on without further inquiry. It is a familiar doctrine that a purchaser is chargeable with notice of facts recited in deeds under or through which he takes title; and while the word "trustee" in a deed gives no notice of the name of the beneficiary, or of the character of the trust, yet it does give notice of a trust of some description, which imposes the duty of inquiry as to its character and limitations; and whatever is sufficient to put a person of ordinary prudence upon inquiry is constructive notice of everything to which that inquiry would presumably have led.

But the court finds that the Market Company, before and at the time of the conveyance to it by Crowell, was informed by Crowell that the Farming Company had paid the entire consideration for the property so conveyed to him, and that he then held the title thereto in trust for the use and benefit of the Company, and that he was disposing of the property for the purpose of closing up its business; that in reliance upon such notice, and believing the fact to be that the Farming Company was desirous of disposing of the property by and through Crowell, then holding the title thereto for such purposes, the Market Company purchased and paid for the property. We have carefully examined the evidence, and are fully satisfied that it abundantly justified these findings. In fact the testimony of Crowell and of Benton (who, as its president, transacted the business in behalf of the Market Company) to that effect stands uncontradicted.

The facts thus found constituted due diligence in following up the inquiry suggested by the word "trustee" in the deed, and the information received was, under the circumstances, such as to render it unnecessary, in the exercise of reasonable care, to make further inquiries as to the possible rights of any one, at least other than of the Farming Company.

As the deed gave no indication as to who the possible beneficiary was, the only persons of whom inquiry could or would naturally be made were the grantor and the grantee. If Fletcher, the grantor, had been inquired of, presumably the Market Company would have been informed, as the facts were, that the consideration was paid

by the Farming Company, and at its direction the deed made to Crowell. There is nothing, however, to suggest that Fletcher knew of the subsequent declaration of trust by Crowell in favor of Parsons and Handy. The other person of whom inquiry could be made was Crowell, who made a statement of the situation, which, especially in view of the fact that the Farming Company had paid the consideration for the property, was reasonable and natural, and one upon which a prudent man would have been justified in acting without inquiry whether possibly some one other than the Farming Company might not be the beneficiary. Under the circumstances, the conclusion at which any one would naturally have arrived would have been that, for convenience, the title had been put in Crowell, in trust (perhaps not enforceable, because not in writing) for the Farming Company, which paid the consideration; and it can make no difference whether the information was given by Crowell in response to inquiry or volunteered to induce the Market Company to make the purchase. And while it is true that the possibility that a false or incompetent answer may be given is no excuse for not making inquiry, yet a false answer or a reasonable answer given to an inquiry made may dispense with the necessity of further inquiry. All that is required of a party who is put upon inquiry is good faith and reasonable care in following up the inquiry which the notice given him suggests. As the information given by Crowell suggested an interest in the property on the part of the Farming Company, it is quite possible, had there existed an enforceable trust in favor of that company, and its limitations and restrictions had been such that Crowell had no power to convey, that, as to the Farming Company, the Market Company would have been chargeable with notice of these facts, of which presumably the latter would have been informed upon further inquiry of the former. But there was nothing in the information received of Crowell that would have suggested to any man of ordinary prudence that Parsons or Handy individually had any interest in the land, especially as they themselves were promoting and negotiating for this very conveyance by Crowell to the Market Company. The court also finds that the Market Company never had any knowledge or information of any character of the existence of this declaration of trust until November, 1891,—nearly a year after its deed from Crowell was executed and recorded.

As applied to Benton, its president, who transacted the business in its behalf, this finding is unquestionably justified by the evidence. Counsel for plaintiff claims that Benton was chargeable with actual notice, because this declaration of trust and the mortgage from Parsons to plaintiff were contained in an abstract of title of the property which he had procured, and which he did not, but ought to have, examined. We do not see that one who obtains an abstract of title, and then buys, without examining it, is in any worse position than one who buys without obtaining an abstract at all. But we do not understand the evidence as counsel seems to. We understand Benton's testimony to refer to the abstract brought down to the date of the conveyance by Fletcher, and not to the one brought down to the fall of 1891, after he learned of the claim of the plaintiff. Moreover, the declaration of trust could not have been on any abstract at the time of the conveyance to the Market Company, for it was not on record.

It is also claimed that the Market Company is chargeable with notice of plaintiff's rights, because Crowell, Handy, and Parsons had actual knowledge of them, and that, as they were corporators of the Market Company, their knowledge was its knowledge. Had these three constituted *all* the corporators of this Company, there might have been something in this point, and that is as far as any authority cited by plaintiff goes. But in this case there were other corporators, who were taking and paying for stock in the corporation, who had no such notice. Generally, and for most purposes, a corporation is a legal entity distinct from the body of its stockholders; and, in any event, to render the knowledge of the individual corporators the knowledge of the corporation, it must be the knowledge of all the corporators.

The suggestion that the Market Company was not a purchaser for a valuable consideration is without merit. The issuing of paid-up stock of the corporation in payment of the property of itself constituted a valuable consideration.

Order affirmed.

(Opinion published 55 N. W. Rep. 825.)