STERNFELS et al. v. WATSON et al.

(Circuit Court, D. Oregon. July 19, 1905.)

No. 2,782.

1. TRUSTS—NOTICE—CONVEYANCE TO PERSON AS TRUSTEE.

The word "trustee" following the name of the grantee in a deed is notice that he is not the owner of the property, and is sufficient to put all subsequent purchasers from him on inquiry as to the existence and nature of the trust.

2. SAME—PURCHASER FROM TRUSTEE—RIGHTS OF EQUITABLE OWNERS.

The legal presumption is that a trustee has no power of sale, and a mortgagee of property which was conveyed to the mortgagor as trustee and all subsequent purchasers through him are bound to exercise reasonable diligence to ascertain whether or not the equitable owners of the property had authorized the execution of the mortgage. Such diligence is not exercised where there is nothing of record, and they fail to make inquiry of the trustee himself, and make no effort to do so; and the contingency that he might have denied the trust is no excuse for such failure.

3. SAME.

Where a conveyance of property is taken to one as trustee, the trust being in fact in favor of others, who paid the consideration therefor, the rights of the equitable owners are not affected by the fact that the declaration of trust was not executed until afterward.

4. SAME—MORTGAGE BY TRUSTEE—VALIDITY.

A mortgage given by a trustee on property the title to which he holds in trust for himself and others, although unauthorized and invalid as against his co-owners, is valid as to his individual interest in the property as against a subsequent purchaser.

5. SAME—UNAUTHORIZED CONVEYANCE BY TRUSTEE.

Three persons purchased a tract of land, each paying a portion of the consideration, and a conveyance of the same was taken to one as trustee. A declaration of trust was subsequently executed, showing that he held the title in trust for himself and the other part owners, which instrument was not recorded. The trustee subsequently executed a mortgage on the land, which was foreclosed, and the title acquired by the purchaser at the sale passed, through mesne conveyances, to defendants. The co-owners of the trustee had no knowledge of the mortgage, which was not authorized by the declaration of trust, nor of the foreclosure proceedings. Only one of the subsequent purchasers made any inquiry as to the nature of the trust disclosed by the first deed, and he made none of the trustee himself, and no effort to do so. Held, that the mortgage and subsequent conveyances passed title only to the trustee's individual interest, and that defendants held the remaining interests subject to the original trust.

6. SAME—SUIT TO ENFORCE—LACHES.

Where the holder of the title to land on an express trust for himself and others has never denied the trust to his co-owners, they are not chargeable with laches in failing to institute proceedings to recover their interests from adverse claimants through unauthorized conveyances by the trustee, of which adverse claims they had no notice.

In Equity. Suit to enforce trust.

The complainants, who are the widow and heirs at law of Morris Sternfels, deceased, presented their bill alleging that Morris Sternfels died intestate September 24, 1900; that prior to March 28, 1891, said Morris Sternfels, George B. Rate, and T. J. Watson made an agreement to purchase a tract of land, which is described in the bill, for the sum of $7,500, the said Sternfels was to contribute four-fifteenths thereof, Rate was to contribute two-fifteenths, and

T. J. Watson was to contribute the remaining nine-fifteenths, all of said parties to own and hold said land jointly in proportion to the money paid by each, and to take a deed therefor in the name of T. J. Watson, trustee, for said purchasers; that pursuant to said agreement said parties did, on March 28, 1891, purchase said land for said sum of $7,500, and a conveyance was taken in the name of "T. J. Watson, trustee"; that the deed was duly recorded on May 8, 1891; that said land was so taken in the name of T. J. Watson, trustee, for the purpose of enabling him to sell the same in small parcels at a profit to the owners, and for no other purpose; that pursuant to said agreement and conveyance the said Sternfels, Rate, and Watson, on March 31, 1891, made and entered into a declaration of trust in which said Watson covenanted to and with the other owners of said property that he held the same in trust for the purchasers in the proportions above set forth, and that upon the sale of the same he would account to them in said proportions, after deducting necessary expenses; that pursuant to said agreement said land was surveyed and laid out in a town or addition to Hood River, Or., and platted in lots and blocks under the name of "Idlewilde Annex"; that on December 11, 1894, said Watson, in consideration of $1,739, to him paid by said Morris Sternfels, sold and conveyed unto him all his right, title, and interest in and to said tract; that thereupon said Sternfels became the owner of a thirteen-fifteenths interest in said land; that prior thereto, and on January 16, 1893, said Watson executed and delivered to Fred Darvill a mortgage on said land to secure payment of $1,000 and interest; that said mortgage was made, delivered, and received in bad faith, and without the knowledge of said Sternfels, and without authority, and in breach of said trust, and the sum so borrowed was not needed to carry on said trust or to protect said tract of land, and that none of the same was used in carrying out said trust, but was used by said Watson for his sole and exclusive use and benefit; that thereafter said Darvill assigned his mortgage to Charles E. Gill; that on December 10, 1894, said Watson, trustee, filed in the county clerk's office of Wasco county a petition asking that the plat of Idlewilde Annex be vacated, and in said petition he recited that he was the trustee of the owners of said Idlewilde Annex; that on December 21, 1894, a complaint was filed to foreclose said mortgage, in which complaint T. J. Watson, trustee, T. J. Watson and M. G. Watson, his wife, were named as defendants; that on said proceedings a decree of foreclosure was had, and said land was sold to Gill on May 1, 1895, for $1,261.85; that said land so purchased by Gill was impressed with said trust; that on July 3, 1902, said Gill conveyed said land to Robert R. Erwin, a son-in-law of said T. J. Watson, and on July 29th of said year said Erwin and wife conveyed the same to the defendant Joseph F. Batchelder; that on November 4, 1902, said Batchelder and his wife conveyed said land to George T. Prather and Lucretia H. Prather, his wife, and on November 24, 1902, said Prather and wife executed and delivered to Joseph F. Batchelder and Robert R. Erwin, trustees, a conveyance of the said land; that said original mortgagee and all his grantees had notice and knowledge of said trust; that the complainants had no knowledge or notice of any of the facts above alleged, except the deed of trust and the declaration of trust, until December, 1902. And complainants prayed that they be decreed to be the owners of thirteen-fifteenths of said land, and that the defendant George B. Rate have such relief as he may be shown to be entitled to, etc.

The answer of the defendants other than Rate denies that Sternfels owned any interest in said land at the time of his death, or that George B. Rate ever had any interest therein, and alleged that Joseph F. Batchelder is the trustee, and holds said property in trust for himself, C. Lombardi, George E. Prather, C. E. Heman, and R. R. Erwin. The defendants deny the agreement to purchase, or the contribution of money therefor by Sternfels or Rate, and the execution of the declaration of trust, and deny that the legal title to said land was taken for said purchasers in the name of T. J. Watson as trustee. They deny that said mortgage was made in bad faith, or without the knowledge of Sternfels, or without his authority, or in breach of said alleged trust. They deny that the title which passed to said Gill on foreclosure was impressed with the trust, or that any subsequent purchasers had notice of the trust. The defendant George B. Rate filed an answer both to the bill of complaint and to the

answer of the other defendants, in which he denied the material allegations of said answer, and admitted, affirmed, and confirmed all the allegations of the bill, and prayed for the relief prayed for by the complainants in proportion to his interest in the property. No exception was taken to the form of his pleading, and, as the parties went to trial upon the issues so formed without objection, the affirmative matter of the answer may, upon the final hearing, be deemed to be substantially a cross-bill.

Upon the issues so made testimony was taken, and it was shown that on March 28, 1891, W. P. Watson and wife executed to "T. J. Watson, trustee," for a recited consideration of $7,500, paid to them by said trustee, a deed to the land in controversy, conveying the same to "T. J. Watson, his successors and assigns, forever," and that said deed contained general covenants of warranty to and with "T. J. Watson, trustee, his successors, heirs, and assigns"; that on March 31st, T. J. Watson duly signed, sealed, and acknowledged a declaration of trust, in which it was declared that the property had been conveyed to said T. J. Watson as trustee, and that he held the same as trustee for Morris Sternfels, who owned four-fifteenths, George B. Rate, who owned two-fifteenths, and T. J. Watson, who owned nine-fifteenths, and that he covenanted upon the sale of the property to account to said parties in the proportions so stated, after deducting all necessary expenses; that said declaration was executed in triplicate, one whereof was given to Morris Sternfels and one to George B. Rate, and that on the copy which was given to Sternfels T. J. Watson subsequently, on December 11, 1894, for a stated consideration of $1,739, assigned and transferred unto the said Sternfels all his right, title, and interest in and to the property described therein. The defendant Batchelder testified that before purchasing the property his attention was called to the word "trustee" in the conveyance to T. J. Watson, trustee, as it appears in the abstract of title; that he saw W. P. Watson, the grantor of said conveyance, who informed him that he didn't know that the word "trustee" was in the deed, and had no knowledge of any trusteeship; and that he made inquiry of Milton W. Smith, who was the attorney for the then owner of the property, who informed him that he had no knowledge of any one having any claim on the property. He testified further that he placed the abstract in the hands of an examiner of titles, and directed him to make thorough inquiry. The examiner of titles so employed testified that he ascertained from the records of Wasco county that there was no declaration of trust on record, and that he made inquiry of Milton W. Smith, who informed him that there was "nothing within his recollection that brought in any one else," but that he made no inquiry of any other person; that he advised Batchelder that, if T. J. Watson could be found, it would be the proper thing to ask him. He gave no testimony as to any effort made to find T. J. Watson. He admitted that he knew that T. J. Watson had been engaged in the real estate business in Portland with his brother, but he stated that it did not occur to him to make inquiry of the brother. There was no other testimony of efforts made to ascertain the existence or the nature of the trust. On the hearing of the case the deposition of T. J. Watson was taken, from which it appeared that he left Portland in the fall of 1897, or early spring of 1898, for Dawson, Yukon Territory.

J. R. Stoddard, for complainants and defendant Rate.
Pipes & Tift, for other defendants.

GILBERT, Circuit Judge (after stating the case as above). There can be no doubt that the use of the word "trustee" in the conveyance to T. J. Watson was sufficient to put all subsequent purchasers from him upon inquiry as to the existence and nature of the trust. Railroad Co. v. Durant, 95 U. S. 576, 24 L. Ed. 391; Shaw v. Spencer, 100 Mass. 382, 97 Am. Dec. 107, 1 Am. Rep. 115; Covington v. Anderson, 16 Lea (Tenn.) 310. The rule applicable to such a case is well expressed by the Circuit Court of Appeals for the Eighth Circuit in Geyser Marion Gold Min. Co. v. Stark,

106 Fed. 558, 45 C. C. A. 467, 53 L. R. A. 684, in which it was said of the use of the word "trustee":

"It is a warning and declaration to every one who reads it (1) that the person so named is not the owner of the property to which it relates; (2) that he holds it for the use and benefit of another; and (3) that he has no right or power to sell or dispose of it without the assent of his cestui que trust. It denies the equitable ownership and beneficial interest of the party to whom it is applied, and asserts that he holds it in a representative capacity. It signifies the opposite of the word 'owner,' and means that, while the party called 'trustee' has the naked legal title, he has no beneficial right, title, or interest in the property. * * * Hence the legal presumption is that a trustee has no power to sell or convey the property which he holds in his fiduciary capacity, and the fact that he holds it as trustee is a warning and a declaration to all the world that he is without the power of disposition, unless that power is specifically given by the instrument creating the trust, or by the assent of those whom he represents. The legal presumption is that a trustee has no power of sale. Jaudon v. Bank, Fed. Cas. No. 7,230; Gaston v. Bank, 29 N. J. Eq. 98, 103; Duncan v. Jaudon, 15 Wall. 165, 175, 21 L. Ed. 142."

The mortgagee of the mortgage made by Watson and all subsequent purchasers were bound to exercise reasonable diligence to ascertain whether or not the equitable owners of this real estate had authorized the execution of a mortgage. The investigation and inquiry that were made fall far short of what the law requires. No inquiry whatever appears to have been made by the original mortgagee or by his assignee, nor by any of the purchasers, until the purchase which was made by the defendant Batchelder. The extent of his investigation was to ascertain that no declaration of trust was of record, and to inquire of the grantor of Watson, who informed him that he did not know that the word "trustee" was in the deed, and of Milton W. Smith, the attorney for the person from whom he purchased, who informed him that he knew of no one having any claim on the property. No inquiry was made of T. J. Watson, and no effort, so far as the testimony shows, was made to communicate with him. He, of all persons whose names appeared on the records, best knew the facts, and the contingency that he might have denied the trust was no excuse for failure to make inquiry of him. Jones v. Williams, 24 Beav. 62; Jones v. Smith, 1 Hare, 55; Geyser Marion Gold Min. Co. v. Stark, 106 Fed. 562, 45 C. C. A. 467, 53 L. R. A. 684; Shaw v. Spencer and Others, 100 Mass. 390, 97 Am. Dec. 107, 1 Am. Rep. 115; Mercantile Bank v. Parsons, 54 Minn. 64, 55 N. W. 825, 40 Am. St. Rep. 299.

It is earnestly contended by the defendants that no trust was imposed upon the title received by T. J. Watson, for the reason that the declaration of trust was not executed until three days after the execution of the deed. It is unimportant at what date the trust deed was executed. It is not disputed that the trust relation existed at and before the purchase of the property, and it is immaterial, so far as the rights of the complainants are concerned, whether the purchase price was $7,500, or $1,300, as contended for by the defendants. If it was $1,300, additional proof was thereby afforded of the mala fides of T. J. Watson, trustee. Whatever may

have been the consideration actually paid for the land, the facts remain that Sternfels and Rate paid their proportion as declared in the declaration of trust, the deed was taken in trust for them, and the trustee so acknowledged by the declaration. It is true that T. J. Watson in his deposition testified that the mortgage was made with the knowledge and consent of his co-owners of the property, but George B. Rate expressly denied that he ever was informed of or knew of the mortgage until after the commencement of the present suit. What Sternfels would have testified to had he lived cannot be known, but this much is shown: that on December 11, 1894—10 days after the complaint in the foreclosure suit was filed—he bought and paid for Watson's nine-fifteenths interest in the property the sum of $1,739, and thereafter paid no attention to the mortgage or to the foreclosure suit, and never redeemed the property from foreclosure sale. It is not conceivable that he would thus have ignored the mortgage and the foreclosure thereof if he had had knowledge of either. In addition to this, T. J. Watson is effectually impeached by the testimony of witnesses as to his reputation in this community for truth and veracity.

There is no proof that any part of the money raised upon the mortgage was expended upon the trust property, or that the other owners received the benefit thereof, although there is testimony tending to show that at some point of time not remote from the time when the mortgage was made a portion of the land was cleared. That fact alone, even if fully sustained by the evidence, would be no defense to the equitable relief which is sought by the complainants and the defendant Rate. The contention is made that, inasmuch as considerable sums were expended by Batchelder and his associates in improvements upon the property, those expenditures should, in equity, be a charge upon the other interests. But that fact presents no obstacle to the relief which is sought in the present suit. This is not to say that money so expended, if expended in good faith, may not hereafter be the basis of relief in a partition suit between the owners.

There can be no question that the interest of T. J. Watson in the premises passed by the mortgage and foreclosure thereof notwithstanding his subsequent conveyance to Sternfels. Watson owned nine-fifteenths, and could lawfully mortgage his interest.

As to the defense of laches, it is sufficient to say that the trust was an express one, and was never repudiated or denied by T. J. Watson otherwise than constructively by his act of mortgaging the property, and nothing came to the notice of Sternfels or Rate to show that the trust was denied, or that others claimed to hold the property adversely. The law applicable to such a state of facts is expressed in Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718.

The decree of the court will be that the complainants are the owners of four-fifteenths and that the defendant Rate is the owner of two-fifteenths of the property described in the complaint; that the defendants who hold the title to the interest of T. J. Watson

convey such interests to the complainants and the defendant Rate, respectively, within a time to be named in the decree; and that the complainants and defendant Rate recover their costs and disbursements in this suit.