## NORSK HYDRO–ELEKTRISK KVAELSTOF ACTIESELSKAB et al. v. CALI-
## FORNIA & O. S. S. CO.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1922. Rehearing Denied February 20, 1922.)

### No. 3758.

**Receivers ⬳38—Appointment of receiver for steamship held within discretion of court, on facts shown.**

The appointment of a receiver for a steamship in a suit involving the question of her ownership, to keep her employed and to prevent her removal out of the jurisdiction, *held* within the discretion of the court on the facts shown.

Appeal from the District Court of the United States for the First Division of the Northern District of California; William C. Van Fleet, Judge.

Suit in equity by the California & Oriental Steamship Company against the Norsk Hydro-Elektrisk Kvaelstof Actieselskab and Bjarne Eriksen. From an order appointing a receiver, defendants appeal. **Affirmed.**

The bill in this case was filed July 16, 1921, and service thereof with summons was made upon the defendants, who are the appellants here, two days thereafter. to wit, July 18, 1921. The subject of the suit is the Norwegian ship Pacifico, and, the court below having appointed a receiver thereof pendente lite, the present appeal is from that order, and is here submitted upon an agreed statement of the case, which shows, among other things, that the ship is registered under the Norwegian flag, her registered owner being the appellant Eriksen, who, the statement shows, holds the title to the vessel as trustee for the other appellant, which is a Norwegian corporation, and they were in possession of her at the time the suit was brought.

The complaint alleges, in substance, that on or about October 27, 1920, the plaintiff purchased the Pacifico (then called Taiga Maru) from her then Japanese owners, causing the bill of sale thereof to be executed to one Mathiesen, a citizen of the kingdom of Norway, who took and held the ship in trust for the plaintiff, who thereafter held and operated the same for and at its expense; that during the month of January, 1921, Mathiesen transferred the ship to the defendant Norwegian corporation through Eriksen, who thereupon caused her to be registered in his name in the kingdom of Norway; that at the time of such transfer Eriksen knew, or had sufficient information to put a prudent man upon inquiry, that Mathiesen held the ship solely in trust for the plaintiff, and the plaintiff alleged upon information and belief that the defendants paid no valuable consideration therefor, and took the ship with notice of the plaintiff's right thereto.

The defendants in their answer put in issue the averments respecting the holding by Mathiesen of the title to the ship in trust for the plaintiff, and alleged that at the time the defendant corporation took the bill of sale in Eriksen's name neither of the defendants had any notice that Mathiesen held the legal title to the vessel in trust for any one other than one C. Henry Smith, or had any information sufficient to put a prudent man upon inquiry regarding that matter, and alleged in effect that, at the time the vessel was purchased from her then owners by Smith, he caused her registry to be changed and to be registered under the laws of the kingdom of Norway under the name Pacifico, with Mathiesen, a citizen of that kingdom, as the registered owner thereof; that Mathiesen accepted and held the registered ownership of the vessel in trust for Smith as the sole beneficial owner thereof, and that he remained such owner and in possession of the vessel

until he turned it over to the defendants to the action; that the plaintiff permitted Smith to purchase the vessel for himself, to cause her to be transferred to a Norwegian register in the name of Mathiesen, and permitted the latter to accept and hold such registered ownership in trust for Smith; that until about April 20, 1921, the plaintiff made no claim that it was the beneficial owner of the vessel, or any interest therein, and took no steps to inform Mathiesen that it was or claimed to be such beneficial owner, and took no steps to require him to hold the title in trust for it instead of for Smith, and took no steps to secure possession of the said vessel; that long prior to April 20, 1921, and while Mathiesen and Smith were clothed with the indicia of ownership of the vessel. and on or about January 17, 1921, the defendant corporation purchased the ship for the consideration and under the circumstances next stated; that the defendant corporation was and is a manufacturer of nitrates, and for a considerable period prior to January 17, 1921, was engaged in business with Smith whereby it sold him nitrates, and by which it also delivered nitrates to him to be sold by him for it upon a del credere commission; that in pursuing the latter course of business it was the custom between the defendant corporation and Smith for the former to deliver nitrates to him without requiring payment therefor in advance, the amount of the purchase price being charged by it against Smith upon an open account between them; that on January 17, 1921, and for some time prior thereto, Smith was indebted to the defendant corporation upon that account in approximately $150,000; that the defendant corporation refused to deliver to him further nitrates without payment upon delivery, unless he would pay or adequately secure the account, whereupon he offered to cause the ship in question to be transferred to the defendant corporation or its nominee as security for the account, provided the defendant would thereafter continue to deliver nitrates to him without requiring as a condition thereof the payment of the purchase price, but allow such price to be charged against him upon open account; that immediately prior to January 17, 1921, a consignment of nitrates shipped by the defendant corporation to Smith was expected to arrive in California, and did so arrive, which consignment the defendant refused to deliver to Smith. but had stored and held for its account, the approximate value of which was $90,000; that thereafter, and prior to January 17, 1921, the defendant corporation accepted the offer of Smith, in performance of which Smith, on said January 17, 1921, caused Mathiesen to transfer the vessel to the defendant corporation, in consideration of which transfer it delivered the nitrates last mentioned to Smith, charging the price thereof against him upon the said open account, thereby increasing the indebtedness from him to the defendant corporation to the approximate sum of $240,000, no part of which has been paid, and all of which remains due; that the defendant corporation accepted the transfer of the ship from Mathiesen as the registered owner of the vessel, in full belief that he held the legal title thereto in trust for Smith, and that the latter was the sole beneficial owner thereof; that after the receipt of the bill of sale of the ship the defendant corporation caused the registered ownership of the vessel to be transferred from Mathiesen to Eriksen. who thereupon took and held the registered ownership and possession thereof as the agent of the defendant corporation, and as security to the latter for the payment of the $240,000 due it from Smith.

The answer further set up in defense of the action, upon information and belief, that on or about October 19, 1920, Smith and certain other individuals entered into an agreement to purchase from her then Japanese owners the vessel in question, and that for purposes of convenience it was agreed between those parties to use the plaintiff as a temporary organization representing their association in that enterprise, but upon condition that the plaintiff was to have no interest in the vessel; that the purchase price of the vessel was $350,000, and that the said mentioned individuals agreed to contribute $60,000 of such purchase price, and that the actual purchasing of the ship and its operation thereafter should be done by Smith, and that a portion of the purchase price should or might be obtained by mortgaging the vessel; that Smith did purchase her from her then Japanese owners as be-

fore stated, but, instead of mortgaging the ship to obtain a portion of the purchase price, he actually paid the full purchase price with his own funds; that thereafter the said mentioned individuals, through the instrumentality of the plaintiff corporation. paid Smith the $60,000 which they had agreed to contribute toward the purchase price of the vessel, with the exception of which Smith has not been reimbursed to any extent, and that the amount of $290,000 paid by him on the purchase price still remains due; that upon making the said purchase Smith took possession of the vessel, and caused her to be registered under the laws of the kingdom of Norway in the name of Mathiesen as before stated, and that Smith remained in possession of the vessel until she was transferred to the defendants, as has been stated; that Smith caused Mathiesen to accept the registered ownership of the ship upon the trust that he would hold the same for the account and subject to the order of Smith; that by reason of the facts so alleged Smith had, in case the purchase was in reality for the account of the plaintiff, as alleged in the complaint, an equitable lien upon the vessel for the reimbursement to him of the amount of the purchase price which he had paid and for which he has not been reimbursed; that Smith caused Mathiesen to indorse and deliver to the defendant corporation the bill of sale of the vessel as security for the sum of $240,000 so due by Smith to the defendant corporation, under and by virtue of which all the rights and equities of Smith in and to the vessel passed to that defendant, under and by virtue of which bill of sale it caused the registered ownership of the ship to be transferred to its co-defendant, Erikson.

The answer also alleged that the plaintiff has never paid or offered to pay to either Smith or the defendant corporation any part of the purchase money of the vessel advanced by Smith, and it also set up as a separate defense that ever since July 21, 1916, the laws of Norway have made unlawful and prohibit the legal or beneficial ownership of any vessel registered under its laws to be held by one not a citizen of that country, or by a corporation not organized and existing under its laws, any violation of which is made punishable by fine and imprisonment, and a forfeiture of the vessel, by reason of which it is alleged the defendants should not be compelled to transfer either the registry or beneficial ownership of the vessel to the plaintiff.

In its petition for the appointment of a receiver pendente lite the plaintiff alleged in substance that at all times since the petitioner purchased the ship on October 27, 1920, she had been operated by and at the expense of and for the sole account of the petitioner, under the command of one H. J. Hammer as master, who, until on or about July 15, 1921, operated the vessel under and in pursuance of the orders and instructions of the petitioner; that on or about the said 15th day of July, 1921, and since the ship reached the waters of San Francisco Bay, the said master ceased to obey the orders and instructions of the petitioner respecting the management and operation of the ship, but from that time obeyed the orders and instructions given him by the defendant Norwegian corporation, which corporation, according to the allegations of the petition, claims to be entitled to the immediate possession and control of the ship, and intends to and will, unless restrained by order of the court, endeavor to operate, and, incident to such operation, remove the ship from the jurisdiction of the court, rendering it impossible for the petitioner to procure charters and contracts of affreightment for the ship, and the necessary material, supplies, and labor required for her operation; that the vessel is of a value in excess of $350,000, and that "said steamship and her apparel and equipment are subject to serious depreciation in value by virtue of nonusage, and those legally and equitably entitled to the use, earnings, and benefit of said steamship will suffer great and irreparable injury, if said steamship is not operated for the length of time necessary to permit of a full and final adjudication" by the court as to the right of the respective parties in and to the ship and her equipment.

McCutchen, Olney, Willard, Mannon & Greene and McClanahan & Derby, all of San Francisco, Cal. (Warren Olney, Jr., of San Francisco, Cal., of counsel), for appellants.

Louis Ferrari and Bell, Simmons & Creech, all of San Francisco, Cal. (Golden W. Bell, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). It is needless to cite the almost innumerable decisions that might readily be cited to the effect that the discretion possessed and exercised by a judge in appointing a receiver is not an arbitrary discretion, and where shown to be such will not be sustained by an appellate court. In the present case, however, we are unable to hold that there was any violation of the sound discretion with which the court below was invested, in making the appointment complained of. The showing made on the hearing of the application disclosed, among other things, that, at and prior to the time of the purchase of the vessel from her then Japanese owners, Smith was president of the plaintiff corporation, and was personally present at a meeting of its stockholders held at the office of the company in the city of San Francisco, October 9, 1920, at which meeting "it was decided to purchase the 'Taigi Maru,'" at a certain stated price, and at which meeting "it was also decided to place the steamer under Norwegian flag, and," according to the record, "the ownership of the steamer will be in the name of the California & Oriental Steamship Company, with a corresponding owner in Norway, according to law."

The record further shows that at a meeting of the board of directors of the plaintiff corporation held April 18, 1921, Smith tendered his resignation as a member of the board, "to take effect immediately," which resignation was thereupon accepted; that on the next day— April 19, 1921—at a meeting of the board of directors of the plaintiff at which Smith was present, this resolution was adopted:

"With the unanimous consent of all the directors of this corporation, C. Henry Smith, manager, was directed to send the following telegram to Arthur Mathiesen, corresponding owner, in Kristiania, Norway, to wit:

"Inasmuch as steamer Pacifico is owned by California & Oriental Steamship Company, please cable declaration that such is the fact that you are the representative of this company. [Signed] Smith"

—and that Smith sent the telegram. The record further shows that two days thereafter, to wit, April 21, 1921, Smith exhibited to the company a reply to his telegram, in these words:

"Referring to your telegram just received, Pacifico is actually owned by the California & Oriental Steamship Company. I am registered owner of the steamer and representative of this company. Accordance with your instructions bill of sale has been deposited with the Norsk-Hydro Kristiania as security for your debts to them. They are entitled to have clean bill of sale at any time transferred to them."

The record further shows that among the records of the plaintiff corporation are what purport to be copies of two letters signed by Smith, one dated October 23, 1920, and the other October 25, 1920. They are as follows:

"Oct. 23, 1920.

"Chr. Barth, Esq., Attorney at Law, Christiania, Norway—Dear Mr. Barth: Referring to my letter of September 25th, I have had, in the meantime, occasion to transfer a steamer to Norwegian flag which was purchased for

friends here from Japanese owners, named the 'Taigi Maru' or now named 'Pacifico.' Inasmuch as all negotiations were carried on by cable, I had to appoint a corresponding owner in Norway in order to avoid any delay to the boat, and shipowner. Mr. Arthur H. Mathiesen, Kristiania, has agreed to act as correspondent for the steamer, and I have so advised the broker, Messrs. Pinkney & Co., Cardiff, and they are therefore sending the necessary papers to Mr. Mathiesen. If you will be willing to attend to the matter of incorporating the steamer in a Norwegian company for the owners here, please send me a cable. I do not know whether your specialty is admiralty law, but if you, for any reason, could not handle this matter, probably you could recommend some one to us, by cable. In the meantime, I beg to mention the necessary particulars to follow in this case:

"The owners here of the S. S. Pacifico bought the steamer on a cash basis of £18-0-0 per deadweight ton, or £98,154-0-0, and the capital stock of the company should be one-half of this amount, or £49,077-0-0, or the equivalent amount in Norwegian currency. I presume it will be necessary, according to Norwegian law, to have at least three Norwegian directors besides myself, as I am an American citizen, and if you in that case should be willing to stand as one of the directors, I would name my brother, Privisor Arthur Smith, Sarpsborg, besides Mr. Arthur H. Mathiesen, and I will write him in the matter in the same mail. The name of the company should be A/S Pacifico. As to your remuneration, we shall, no doubt, be able to agree on this.

"On account of having been obliged to make the necessary arrangements by cable with Mr. Mathiesen, who will act as corresponding owner for the steamer, we have had no opportunity for drawing up any contract. As the steamer is owned by a company here, it would be necessary for me to have some sort of an agreement with Mr. Mathiesen, and I have offered him a remuneration of Kr. 12,000 per year during the time he is standing as corresponding owner, and the duties will be principally to engage officers whenever any vacancies occur: to make up returns for taxes from statements that we will furnish him from here covering the earnings and expenses; also to attend to the insurance at rates which are no higher than can be obtained from here. The stock is to be issued in the name of the California & Oriental Steamship Company, San Francisco, California, as this company is the actual owner of the boat, and the shares to be in denominations of Kr. 6,000 or Kr. 12,000.

"If there are any other points that have not been fully explained, we can easily do so by cable. In the meantime, remain with kind regards,

"Yours very truly,                    C. Henry Smith."

"Oct. 25, 1920.

"Mr. Arthur H. Mathiesen, Kristiania, Norway—Dear Sir: Referring to your cable to-day, as per copy inclosed, in which you suggested a limited company be formed according to Norwegian laws, I telegraphed in reply thereto that I had already sent full particulars by mail. You will appreciate that, on account of the limited time I had to take over this boat. I had not made any such arrangement, and I am very much obliged to you for accepting the proposition I made, to act as correspondent for the boat, and I have now written my friend, Advokat Barth, at Kristiania, with regard to this company. I asked Mr. Barth to get in touch with your good self, and as I also thought it would be necessary to have a third director under Norwegian law, I suggested my brother, Arthur Smith, Sarpsborg, who also will call on you in this connection. I am thankful for the information in your cable that six-tenths of the capital must be owned by Norwegian subjects, and I am writing Advokat Barth with regard to this stipulation.

"Insurance: I beg to confirm cable in which I asked you to cover Kr. 2,000,000 hull 6 per cent. and interest and disbursements Kr. 700,000 2¼ per cent. The valuation of the steamer is Kr. 2,600,000, which kindly keep private. I have cabled London for rates, but so far have not had any reply, as they are very particular about which trade the steamer was to operate.

so under the circumstances, not having anything definite from London, I accepted your rates on the basis as just mentioned.

"I also appreciate very much that you have engaged three engineers, 750, 575, and 480, respectively, and three mates, 560, 460, and 350 monthly, which is satisfactory, and may say that I had already engaged a captain through Messrs. Pinkney & Co. on the basis of Kr. 12,000 per year.

"Loan with Mortgage in Steamer: I have been in communication with a bank in Norway and also an attorney with regard to a loan, and thought possibly you could arrange such a loan with the Skibs-Hypothek Bank for one-half of the valuation, basis Kr. 2,600,000, and I shall be glad to hear on what terms such a loan can be obtained and particularly at what rate of interest. Messrs. Pinkney & Co. will be sending you the papers after they have made transfer, and may say that the transfer will be delayed a couple of days on account of the London bills for the balance of the payment being mailed by our bank from New York, instead of being telegraphed, but presume that these bills will arrive there not later than Thursday of this week.

"Yours very truly,                                    C. Henry Smith."

The records above referred to, if genuine, very clearly show that Mathiesen held the title to the ship in trust for the plaintiff corporation; and as the defendants, according to their own pleading, knew that he held it in trust for somebody, it cannot be supposed that they would not have ascertained the truth by making inquiry of the trustee, which it does not appear that they did or tried to do. See our own decision in Sternfels v. Watson (C. C.) 139 Fed. 505; Geyser-Marion Gold Min. Co. v. Stark, 106 Fed. 558, 45 C. C. A. 467, 53 L. R. A. 684; Jones v. Williams, 24 Beav. 62.

The order is affirmed.