# Bayard *versus* The Farmers' and Mechanics' Bank of Philadelphia.

1. A purchaser of stock upon its transfer to him is protected in his purchase although there was no right to make the transfer.

2. Banks and other corporations are trustees for the property and title of each owner of their stock. Having in their keeping the primary evidence of title, they are held to proper care and diligence in its preservation, and may demand evidence of authority to transfer.

3. Although generally the legal title is sufficient evidence of a right to transfer, yet if a transfer would be a wrong to an equitable owner, the corporation make themselves parties to the wrong if they permit it to be done, knowing such equitable right.

4. Letters of administration are always sufficient evidence of authority to transfer, because a sale and transfer of stock is in the line of the duty of administrators, whose primary duty is to dispose of the property, to pay the debts of the intestate, and distribute the residue.

5. A trustee of an insolvent debtor stands on the same footing, and generally an executor, even if the stock may have been bequeathed specifically, the transfer agent having no means of knowing whether it will be necessary to pay debts.

6. The powers of an executor or administrator differ from those of an ordinary trustee, the duty of the latter being not administration, but custody and management.

7. A transfer agent before permitting the transfer of stock, appearing on the face of the certificate to be held in trust, has a right,—especially if the *cestui que trust* is named,—to require the exhibition of the authority to transfer beyond the certificate.

[Bayard v. Farmers' and Mechanics' Bank.]

CERTIFICATE from *Nisi Prius.*

This was an amicable action and case stated between Thomas F. Bayard and The Farmers' and Mechanics' Bank of Philadelphia.

The defendants, as agents of the Commonwealth, issued to "Henry D. Gilpin, trustee," certificates for $4036.53 of the 5 per cent. stock of the Commonwealth, and to "Henry D. Gilpin, trustee of Mary Gilpin," certificates for $8366.96 of the same stock. Mr. Gilpin having died, and Thomas F. Bayard having been appointed trustee of Mary Gilpin, the executors of Mr. Gilpin afterwards transferred both sums to him as "trustee of Mary Gilpin," and certificates therefor were issued by the defendants, as agents of the Commonwealth, to "Thomas F. Bayard, trustee of Mary Gilpin." Since the transfer Mr. Bayard has always received from the defendants the interest on the stock. Mary Gilpin died in 1864, having made a will. After her death Mr. Bayard, as trustee, sold $4000 of the stock, and by power of attorney, authorized its transfer to his vendee. The defendants on demand refused to permit the transfer until the terms of the trust were submitted to their attorney and he should be satisfied that the sale was made in due execution of the trust. Mr. Bayard refused to refer the defendants to anything showing the terms or provisions of the trust, insisting that he was not bound by law to do so.

The question submitted was whether, under the circumstances, the defendants were liable for damages in refusing to permit the transfer. Judgment at Nisi Prius was rendered *pro formâ* for the defendants. This was assigned for error.

*G. W. Biddle,* for plaintiff in error.—1. No company has been permitted to question the right of the holder of the legal title to its stock to transfer it, unless after notice of an intended breach of trust: Bank of England v. Parsons, 5 Ves. 665; Same v. Lunn, 15 Id. 569; Franklin v. Bank of England, 9 B. & C. 156 (17 Eng. Com. L. R. 78); Bank of Virginia v. Craig, 6 Leigh 399; Fowler v. Churchill—Churchill v. Bank of England, 11 M. & W. 323; Bank v. Wyman, 5 Gill 336.

2. No company has been held liable for permitting such transfer, unless guilty of fraud or collusion with the trustee: Hartga v. Bank of England, 3 Ves. 55; Field v. Schieffelin, 7 Johns. Ch. Rep. 150; Knight v. Yarborough, 4 Rand. 566; Garrett v. Macon, 6 Call 308, 361–362; Tyrrell v. Morris, 1 Dev. & Bat. Eq. Rep. 559. In the case of Lowry v. Farmers' Bank of Baltimore, 3 Am. L. J. N. S. 111, 116, 117, there was either collusion with the trustee or the bank had knowledge of the intended perpetration of fraud: See Albert v. The Savings Bank of Baltimore, 1 Md. Ch. Dec. 407–415, 417; s. c. 2 Md. Rep. 159, 168–170.

[Bayard *v.* Farmers' and Mechanics' Bank.]

*R. L. Ashurst* and *E. S. Miller*, for defendants in error.—An attorney in fact with general powers, an administrator and a trustee for an insolvent debtor, having no express trust to guide them, may transfer without question. Possibly there may be a distinction between an executor and trustee : Trotter *v.* Shippen, 2 Barr 358 ; Mabank *v.* Metcalf, 3 Atk. 96 ; McLeod *v.* Drummond, 17 Ves. 152. But where an executor may be held to have completed his administration, he is like a trustee : Austin *v.* Bank of England, 8 Ves. 523 ; Bank of England *v.* Lunn, 15 Id. 583 ; Same *v.* Moffatt, 3 Bro. C. C. 260 ; Garnett *v.* Macon, 2 Brock. C. C. 186 ; 6 Call 308 ; Charlton's Appeal, 10 Casey 473 ; Petrie *v.* Clark, 11 S. & R. 377 ; Pendleton *v.* Fay, 2 Paige 202 ; Ventress *v.* Smith, 10 Peters 167 ; Donaldson *v.* West Branch Bank, 1 Barr 286 ; Marshall *v.* Hoff, 1 Watts 440 ; Shepard *v.* McEvers, 4 John. Ch. R. 136. A trustee under a special trust is different, his purchaser knowing the trust becomes a trustee if there be a breach of trust : Walsh *v.* Stillé, 2 Pars. 21 ; Harrison *v.* Harrison, E. 1746, 2 Atk. 121 ; Bostock *v.* Blakeney, 2 Bro. C. C. 653 ; Waite *v.* Whorwood, 2 Atk. 159 ; Powlet *v.* Herbert, 1 Vesey, Jr., 297 ; Kellaway *v.* Johnson, 5 Beav. 317 ; Quick's Executors *v.* Fisher, 1 Stockton 802. A bank is in a worse position than a trustee. Until the transfer on the books, the assignee has a mere equitable claim to a *quasi* chose in action, and is liable to every equity subsisting against the assignor : Arnold *v.* Ruggles, 1 Rhode Island 165 ; Farmers' Bank *v.* Inglehart, 6 Gill 50 ; Walsh *v.* Stillé, 2 Parsons 17–21. When the transfer has been made and the new certificate has passed into the hands of a *bonâ fide* holder, all recourse against the transferree is at an end : Chew *v.* Bank of Baltimore, 14 Md. 300 ; Slowman *v.* Bank of England, 14 Simons 475 ; Pollock *v.* National Bank, 7 N. Y. (3 Selden) 274 ; Wayman *v.* Bank, 5 Gill 336 ; Hodges *v.* Planters' Bank, 7 Gill & Johns. 306. Lowry *v.* Farmers' Bank of Baltimore, *supra*, sustains the defendant in error. Mechanics' Bank of Alexandria *v.* Seton, 1 Peters 299 ; Sabin *v.* Bank of Woodstock, 21 Verm. 353 ; Larkin's Appeal, 2 Wright 458 ; Cadbury *v.* Duval, 10 Barr 267 ; Dalzell *v.* Crawford, 1 Pars. 48 ; Grant *v.* Hook, 13 S. & R. 262.

The opinion of the court was delivered, May 15th 1866, by

STRONG, J.—Passing by the question whether the defendants, being mere agents of the Commonwealth, are liable to damages at the suit of the plaintiff, even for a wrongful refusal to permit him to transfer the stock, we come immediately to the inquiry whether their refusal was wrongful. Certainly they were under no obligation to permit a transfer if their permission would have exposed them or their principals to a successful claim by any one for the replacement of the stock, or for its value. In a certain

[Bayard *v.* Farmers' and Mechanics' Bank.]

sense, they were custodians of the rights of stockowners. With them was the registry, and transfers could be made only with their consent, by the surrender of the certificates and the issue of new ones to the transferree.

A purchaser of stock does not receive the certificate of his vendor, but a new one, made out in his own name, and reciting nothing contained in the former. He is therefore protected in the enjoyment of his purchase, even though there was no right to make the transfer to him. For this reason, an unauthorized transfer is a wrong done to the owner of stock, for which not only the person who makes it, but any one knowingly assisting in the wrong, is responsible. That a bank or other corporation, and also these defendants, are trustees to a certain extent for stockholders—that is, for the protection of individual interests—cannot be denied. They are alike trustees of the property and of the title of each owner. They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation. From this it results that they may rightfully demand evidence of authority to make a transfer before they permit it to be made. Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes. Generally, sufficient evidence of such right is found in the possession of legal title to the stock. Yet it is well settled that it is not in all cases sufficient, notwithstanding that the true equitable ownership may be in some other than the holder of the legal right, and a transfer may be a gross wrong to such an equitable owner. To that wrong the corporation or keepers of the register make themselves parties, if, with knowledge that there is no equitable right to transfer, they permit it to be done. And in equity, whatever puts a party upon inquiry, is notice of what inquiry must reveal. The real difficulty, is in determining how far it is the duty of the transfer agent to inquire. The law casts the legal ownership of personal property of a deceased intestate upon his administrators. They are sometimes said to be trustees, but they are such for administration. Their primary duty always is to dispose of the personal property, and therewith pay the debts of the intestate and make distribution amongst his next of kin. A sale and transfer of stocks by them is therefore in the line of their duty. There is no *cestui que trust* having a right to interfere and prevent such a transfer. Hence, letters of administration are always sufficient evidence of authority.

A trustee of an insolvent debtor would seem to stand on the same footing. And so, generally, does an executor. His primary duty is administration. He is to pay debts and legacies out of the personal estate, and use even specific legacies to pay debts if necessary. His letters testamentary, therefore,

show an apparent right to dispose of the stocks of the testator. Even if the stock has been bequeathed specifically, a transfer agent has no means of ascertaining whether it is needed to pay debts. He can inquire only of the executor, the very person who proposes to make the transfer. If he inquire of the specific legatee, he can learn nothing, for the legatee may be ignorant, and to require evidence of authority beyond the letters testamentary, might greatly delay and embarrass the executor in the discharge of his duties. It has therefore generally been held that transfer agents may safely permit a transfer of stock by an executor without looking for his authority beyond his letters. Such was the ruling in Hartga *v.* The Bank of England, 3 Vesey 55; Bank of England *v.* Parsons, 5 Id. 665; Same *v.* Same, 15 Id. 569; Franklin *v.* The Bank, 9 B. & C. 156; Fowler *v.* Churchill, and Churchill *v.* The Bank, 11 M. & W. 323; and Bank *v.* Franklin, 1 Russell. Ch. 575. Similar decisions have been made in this country, and so far the law is undoubted.

Yet even in cases in which executors have attempted to make transfers of stock, or a public loan, transfer agents (meaning thereby the corporations in which the stock is held) have sometimes been required to make inquiry into the right of the executor beyond the letters testamentary, and even beyond the will itself. In Lowry *v.* The Commercial and Farmers' Bank of Baltimore, decided by Chief Justice Taney, in the Circuit Court of the United States for the Maryland District, and reported in American Law Journal, N. S., vol. 3, page 111, it was ruled that where bank stock had been bequeathed to an executor in trust to pay the dividends to certain persons, and the executor had transferred it to one who made allowances thereon for the use of the executor, the bank which had issued the certificate, having notice that the stock belonged originally to the testator, was bound to look at the title of the executor under the will before it permitted the transfer. In that case the transfer was made by the executor as such, and there was no proof of any actual notice to the bank that the stock had been specifically bequeathed, and that the executor was violating his trust by making the transfer. Yet the chief justice held that the bank was bound to take notice of the will when the transfer was proposed by one of the executors; that it was negligence in the bank not to examine it, and that if it was ignorant of its contents, and of the specific bequest of the stock, it was its own fault; that it must be dealt with as if it had possessed actual knowledge that the stock in question was specifically bequeathed by the testator, and was not by the will to be transferred. He then proceeded to show that while it might have been sold if necessary for the payment of debts, there was enough to indicate to the bank that it was not needed for such an use. The bank was therefore held

liable as a party to the fraud of the executor. It was held respon-sible for not preventing the executor, who had the legal right, from making the transfer. But were it conceded that in no case is an executor offering to make a transfer of stock issued to his testator, under obligation to exhibit any other authority than his letters testamentary, it would by no means follow that this plain-tiff had a right to demand of the defendants an allowance of his proposed transfer without furnishing for them inspection more than his certificate. He was not an executor, but a trustee. The certificates held by him had been issued in the name of " Thomas F. Bayard, trustee of Mary Gilpin." Upon their face it ap-peared that though the legal right was in him, he was not the owner. The person to be affected by the transfer was not him-self, but Mary Gilpin. There is a marked difference between the powers of an administrator or executor and those of an ordinary trustee. The common duty of the latter is not administration or sale, but custody and management. No purchaser either of land or personalty would be safe in buying from a known trustee with-out looking at the nature and extent of his trust. It is true, a trustee may have power to sell, but the power is not a necessary incident to his trust as it is to the office of an executor. He may have the legal title, and yet have no authority to sell. His sale may be entirely unauthorized by the instrument that created the trust; it may have been forbidden. Why, then, does not a bank or a transfer agent act at its peril when permitting him to make a transfer? If in truth he has no such power, the bank, by accept-ing his certificates and issuing others in lieu thereof to his trans-ferree, is assisting him to destroy the rights of the *cestui que trust*. It has even been held that a corporation is liable, if it permit a transfer by a lunatic holding a legal right, though it had no knowledge of the lunacy, and was guilty of no actual fault: Chew & Goldsborough v. The Bank of Baltimore, 14 Maryland 299. The reason given was that it might have provided against the transfer by precaution. If thus liable when only the inno-cent cause of a loss, much more is the liability certain when the transfer is permitted with full knowledge that the stock does not belong to the person who offers to transmit it to another; if the transfer is in fact unauthorized, such knowledge was given in this case by the form of the certificates. It is true that it was ruled in Albert & Wife v. The City of Baltimore *et al.*, 2 Maryland 159, that the mere designation of the stockholder as trustee with-out a specification of the trust, or naming the *cestui que trust*, was not such notice to the transfer agents as to make it their duty to look beyond the legal title, for it did not point to any source of information. The fiduciary character of the person in whose name the stock stood did not appear, and in Stockdale v. The South Sea Company, Barnardiston 363, the Lord Chancellor said,

[Bayard *v.* Farmers' and Mechanics' Bank.]

"It is certain these great companies are only to consider the person in whose name the stock stands, unless the trust of the stock is declared on their books." But naming the person for whose use the stock is held is certainly a declaration of the trust. In remarking upon the case of Harrison *v.* Harrison, 2 Atk. 121, Davis *v.* The Bank of England, 2 Bright 393, and other cases in which the legal authority of a trustee to transfer has been conceded, Chancellor Johnson said, in Albert *v.* The Savings Bank, 1 Maryland Chancery Decisions 407, "they must be understood as applying to cases where the fiduciary character appears, but there is nothing to indicate the nature of the trust, or the *beneficiaries.*" And there is no case in which it has been ruled that a trustee of stock, whose certificate shows a declared trust for another named, has a right to transfer it without showing a power beyond his certificate. It never has been decided that a corporation may disregard the rights of a known equitable stockholder. It would be an anomaly were there any such decisions. An obligor in a bond must take notice of the rights of an equitable assignee of the obligee. A stakeholder cannot very safely pay over to him who has the legal right when he knows another to be the beneficial owner. With equal reason, at least, ought it to be held illegal for a corporation to aid in destroying the title of a *cestui que trust* to its stock without being satisfied that the trustee had authority to part with and destroy it. We hold, therefore, that the plaintiff had no right to insist upon being allowed to make a transfer of stock which he held ostensibly in trust for Mary Gilpin, without exhibiting to the defendants an authority to transfer beyond the certificate.

The judgment is affirmed.