## ACTION NOT DEFEATED BY TARDY SUBSTITUTION OF THE PARTY SUBROGATED TO THE RIGHTS OF THE PLAINTIFF.

Court of Appeals for Hamilton County.

AMERICAN BONDING COMPANY OF BALTIMORE v. THE SECOND NATIONAL BANK OF CINCINNATI AND JOHN JOHN C. HEALY, TRUSTEE.*

Decided, March 22, 1915.

*Breach of Trust—Bonds Sold by Trustee Without Authority—Proceeds Converted to His Own Use—Bank Purchasing the Bonds Charged With Knowledge of the Trust—Action Against the Bank by the Succeeding Trustee—Not Abated by Satisfaction of the Claim by the Surety—Statute of Limitations Not Applicable.*

1. The promiscuous use in the papers in the case and on the docket of the court of the names American Bonding Co. and American Bonding & Trust Co. as that of the plaintiff in the case, does not indicate uncertainty as to the identity of the party or that the court was not properly advised with reference thereto, where the correct name was used in the judgment and the motion for a new trial without objection on the part of the defendant.

2. Where a trustee purchases with funds in his hands bonds constituting the highest form of investment known to the law, and the investment is reported to the court in his account which is confirmed in due course, such confirmation operates as an approval of the investment as fully as though a prior formal order had been made.

3. There is no presumption in law of authority on the part of a trustee to sell bonds held by him in trust, and those purchasing from him without a showing of authority to sell will be charged with knowledge that he was probably violating his trust; and a bank, making such a purchase with knowledge that the bonds were held in trust will be held liable for the loss resulting from conversion of the proceeds, notwithstanding it paid full value for the bonds and was in no way in collusion with the trustee in his breach of trust.

*Reversing *Healy, Trustee,* v. *Second National Bank,* 12 N.P.(N.S.), 193.

4. The successor in the trust having brought an action against the bank
   for the loss thus sustained, payment of the loss by the surety dur-
   ing the pendency of the suit does not abate the action but it con-
   tinues in favor of the surety by subrogation, and the substitution
   of the surety as the party plaintiff when made relates back to the
   commencement of the action, which in the present case saves the
   claim of the surety from the bar of the statute.

*Healy, Ferris & McAvoy*, for plaintiff in error.
*Jelke, Clark & Forchheimer*, contra.

JONES (Oliver B.), J.; SWING, J., and JONES (E. H.), J.,
concur.

The first question to be determined in this case arises upon
the motion to dismiss the petition in error. It is contended that
the American Bonding Company of Baltimore, plaintiff in error,
is a stranger to the case below and therefore has no power to
file a petition in error in this case. The original plaintiff in
the case below was John C. Healy, trustee, and he continued
such party plaintiff until February 13, 1909, when an order was
made upon the application of the American Bonding & Trust
Company of Baltimore, Maryland, substituting it as plaintiff
in place and stead of John C. Healy, trustee, and ordering
the cause to proceed thereafter in its name as plaintiff. No new
petition was filed by the American Bonding & Trust Company
as such substituted plaintiff, but an amended answer was filed
after such substitution, February 23, 1909, by the defendant,
the Second National Bank, in which answer no objection was
made to the name of the company being substituted as plaintiff.
A reply to this answer was filed in the name of the American
Bonding & Trust Company, which was verified by John C.
Healy as attorney.

The transcript of the appearance docket below shows in a
number of instances steps taken by the substituted plaintiff
under its then true name of the American Bonding Compay in-
stead of uder the name used in the entry of substitution, to-wit,
the American Bonding & Trust Company, and both the final
judgment entry and the motion for new trial are in the name of

American Bonding Company. If these two names indicate two separate companies, then no final judgment appears on the record as to the American Bonding & Trust Company. The judgment entry against the original plaintiff and the motion for new trial by the original plaintiff after substitution were both unnecessary and need not be considered, if the substituted party appears both in the entry and in the motion, is to be used. In other words, where substitution is made because of a transfer of interest pending the suit, it is not necessary or proper that the original party be continued in conjunction with the substituted party, who takes his place entirely.

Plaintiff in error offered in evidence in this court a printed certified copy of charter and amendments of the American Bonding Company of Baltimore, from which it appears that by special act of the General Assembly of Maryland, dated April 8, 1902, the charter of the American Bonding & Trust Company of Baltimore City was amended so that the name of said body corporate was changed from the American Bonding & Trust Company of Baltimore City to the American Bonding Company of Baltimore, and that this change was accepted by the stockholders of said company under date of July 31, 1902.

From the evidence, therefore, the court finds that there is no question as to the identity of the substituted plaintiff below against whom under its changed name judgment was entered. A mistake was made because of the evident lack of information by the attorney at that time as to the changed name of said company, said company having become surety for the original trustee on his bond under the name of the American Bonding & Trust Company and its name having been changed prior to the entry of substitution to the American Bonding Company of Baltimore, which name should have been used in the substitution. The promiscuous use of these two names in the appearance docket and the use of the correct name in the judgment entry and in the motion for new trial without objection at the time from the defendant indicates that, while no formal correction of the name as written in the entry of substitution was made, the

court was properly advised and there was no question at any time as to the identity of the party.

Great liberality is shown under our code of practice in regard to correction of such mistakes. Section 11363, General Code, formerly Section 137 of the Civil Code, authorizes the correction of a mistake in the name of a party either before or after judgment, in furtherance of justice.

In *State, ex rel,* v. *Bell Telephone Co.,* 36 O. S., 296, it was held:

"Where. a corporation whose name is composed of several words is sued by a name in which a word in the corporate name is omitted, such omission or inadvertence unless pleaded in abatement will be disregarded by the court."

And in *Doty* v. *Rigour,* 9 O. S., 527, it is held:

"Amendments of the record may be made after proceedings in error commenced at any time while diminution may be suggested in the supervising court and *certiorari* awarded."

The question and effect of misnomer and the power of the court to correct mistakes of that character are fully discussed in *Boehmke* v. *Traction Co.,* 88 O. S., 156.

The motion to dismiss the petition in error must therefore be denied.

This action was brought by John C. Healy, to recover the proceeds of two United States registered bonds of $1,000 each, which were held in trust by Charles Santmyer and were sold by him in violation of his trust to the Second National Bank. Mr. Healy had been appointed by the probate court as trustee of James Robinson, under the terms of the will of his grandfather, John Robinson, to succeed said Santmyer, who had been removed by the court. The American Bonding & Trust Company was surety on the bond of Santmyer as such trustee.

From a careful examination of the evidence it is found by the court that Santmyer sold these two bonds to the Second National Bank about September 18, 1899, for the sum of $2,222.50, and

that the purchase money for same was deposited in his individual account in that bank. It is contended by the bank that it did not purchase the bonds itself, but that they were sold by it for Santmyer to another of their customers, Hohnstedt. The books of the bank, however, show the purchase and sale of such bonds by the bank itself. The bond daybook shows that such bonds were bought September 18, 1899, at a premium of $222.50, and sold September 28, 1899, at a premium of $280, showing a profit of $57.50 made by the bank. This evidence is taken in connection with the testimony of Hohnstedt, who says that he did not know Santmyer; had no dealings with him; that his purchase of these two bonds was in connection with other United States bonds and municipal securities and they were bought from the bank itself by him. The actual transfer shown on the books of the United States Treasury, as executed by Santmyer, was dated October 2, 1899, and the new bonds were issued to Hohnstedt October 5, 1899. This transaction was based upon a letter written by William Albert on that day, as cashier of the defendant bank, who conducted the purchase and sale of said bonds on behalf of the bank. The discrepancy in these dates can not be considered material, because Mr. Albert did not send the bonds for transfer until he had arranged for their sale to Hohnstedt, and they never were actually transferred to the name of the bank. The regulations of the United States Treasury required that the assignment of a bond for transfer must be executed and acknowledged before some United States officer or, among others, the cashier of a national bank. It appears that William Albert as cashier of the defendant bank took and certified the acknowledgment of the transfer of these two bonds, and on the form of such transfer endorsed on the bond appears a note stating such requirement and also containing the following language:

"When the assignment is made by a corporation, it must be named as assignor; when by a guardian, *trustee*, executor, administrator, an officer of a corporation or any one in a representative capacity, proof of his authority to act must be produced

to the officer before whom the assignment is made, and must accompany the bond.''

. No such authority to act appears to have accompanied the bond.

As has been stated, these two bonds were written in the name of C. A. Santmyer, trustee. That fact was clearly brought to the notice of the cashier of the defendant bank, and he being the executive officer of the bank his knowledge must be held to be its knowledge (*Bank* v. *Burns,* 88 O. S., 434). The bank certainly was advised of the fact that the proceeds of these bonds were credited to the individual account of Santmyer, and as stated in the brief of counsel for the defense, the fact that Santmyer since then spent the money is not disputed, and it is shown that it was so expended by him from his individual account in the bank, which was introduced in evidence.

In the will of John Robinson creating the trust it was provided that an investment of the trust fund should be ''declared and fixed by the Probate Court of Hamilton County.'' No formal order made by the probate court for the purchase of these bonds is shown in the proof. The account current of Santmyer as such trustee, filed December 26, 1893, under Section 6328, Revised Statutes, shows that $15,000, the amount of such trust, had been received by him April 13, 1890, and had been expended under date July 1, 1890, for $12,000 U. S. registered 4% bonds at 121¼, amounting to $14,550. That account was allowed and confirmed by the probate court July 29, 1896. In regard to the investment of trust funds by the trustee, Section 6413, Revised Statutes, makes the following provision:

''Section 6413. Executors, administrators, guardians, and trustees may, when they have funds belonging to the trust which are to be invested, invest the same in the certificates of the indebtedness of this state or of the United States, or in such other securities as may be approved by the court having control of the administration of the trust.''   (Now G. C. 11214.)

The probate court under the provisions of Section 6330, Revised Statutes, had full power to hear and determine all matters

relative to the manner in which the trustee has executed his trust and all matters relating to his accounts and the settlement thereof.

It is contended by the counsel for defendant in error, that it not having been shown that the probate court ever made a formal order declaring and fixing the investment of this trust fund, that it was the right and duty of Santmyer as such trustee to sell said bonds and convert them into money for the purpose of then making application to the probate court for such formal order declaring and fixing the investment as provided in said will.

We can not admit this claim. It was said in *Byard* v. *Farmers & Mechanics Bank,* 52 Pa., 232:

"The powers of an executor or administrator differ from those of an ordinary trustee; the duty of the latter being not administration, but custody and management."

While an administrator might have the duty of converting all of the property of a decedent into money for the purpose of administration, no such duty can be claimed for a trustee, and when Santmyer, even without an order of the probate court, had invested the funds of said trust in the highest form of investment fixed by the law, Section 6413, Revised Statutes, even though such investment had not been formally directed by the court, he had no duty to make a sale of such bonds or to convert them into cash without an order of the court, especially when it has been shown that the investment had already been reported to the court in his account as rendered, and had been confirmed by the court. Such confirmation undoubtedly operated as an approval of the investment as fully as though a prior formal order had been made.

Santmyer held these bonds as trustee, so expressed on their face, and the bank purchased them with actual knowledge of this fact. The rule is well stated in *3 Pomeroy's Equity Jurisprudence,* Section 1048:

"Wherever property, real or personal which is already impressed with or subject to a trust of any kind, express or by

operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Equity impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary. It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a *bona fide* purchaser for a valuable consideration and without notice. This universal rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trust; it enables them to follow trust property—lands, chattels, funds of securities, and even of money—as long as it can be identified, into the hands of all subsequent holders who are not in the position of *bona fide* purchasers for value and without notice."

The case of *Marbury, Trustee,* v. *Ehlen,* 72 Md., 206, is in point, and is a well considered and instructive case. In the opinion of the court at page 217, the following language is used:

"A trustee presumptively holds trust propery for administration and not for sale. *Jaudon* v. *National City Bank,* S. Blatchford, 430. In 15 Wall., 165, in affirming this decision of Judge Blatchford the Supreme Court says the party taking such stock in pledge deals with it at his peril, for there is *no presumption of a right* to sell it. There being no presumption of the right to sell, a corporation ought to be held affected with notice that a trustee is probably violating his trust when he attempts to sell trust property, known *to the corporation* to be such, without the production of authority for making the transfer."

The case of *Jelke* v. *Goldsmith,* 52 O. S., 499, will not be deemed controlling in the present case because of the difference.

there is in the duties of a trustee and those of an executor or administrator in regard to the sale of property.

It was held in *Geyser-Marion Gold Min. Co.* v. *Stark,* 106 Fed., 558:

"The legal presumption is that a trustee had no power to sell or transfer the subject of his trust."

In the opinion, on page 561, Judge Sanborn used the following language:

"But the word 'trustee' means something. It is a warning and declaration to every one who reads it (1) that the person so named is not the owner of the property to which it relates; (2) that he holds it for the use and benefit of another; and (3) that he has no right or power to sell or dispose of it without the assent of his *cestui que* trust. It denies the equitable ownership and beneficial interest of the party to whom it is applied, and asserts that he holds it in a representative capacity. It signifies the opposite of the word 'owner,' and means that while the party called 'trustee' has the naked legal title, he has no beneficial right, title or interest in the property."

In *Sternfels* v. *Watson,* 139 Fed. Rep., 505, the syllabus is in part as follows:

"1. The word 'trustee' following the name of the grantee in a deed is notice that he is not the owner of the property, and is sufficient to put all subsequent purchasers from him on inquiry as to the existence and nature of the trust.

"2. The legal presumption is that a trustee has no power of sale, and a mortgagee of property which was conveyed to the mortgagor as trustee, and all subsequent purchasers through him are bound to exercise reasonable diligence to ascertain whether or not the equitable owners of the property had authorized the execution of the mortgage. Such diligence is not exercised where there is nothing of record and they fail to make inquiry of the trustee himself, and make no effort to do so; and the contingency that he might have denied the trust is no excuse for such failure."

The case of *Strong* v. *Strauss,* 40 O. S., 87, was where sale

had been made by the guardian, of notes made to him as such. The syllabus is as follows:

"That one who buys such notes bearing on their face the marks of a trust fund, is put upon inquiry; and if he buys them from the guardian, under circumstances fairly indicating that they were sold against the interest of his wards, he gets no title from the guardian who misappropriates the proceeds of the sale."

In the opinion on page 92, the court says:

"* * * The guardian is a trustee, and if one buys from him the ward's personal estate, with actual or constructive notice that the same is held in trust, and under circumstances furnishing reasonable grounds to believe that the sale is not for the ward's interest, the purchaser can acquire no title to the property, if the guardian misappropriates the proceeds of the sale. In such a case the purchaser is put upon inquiry; he buys at his peril; he can stand in no better position than the guardian himself, and must be held to be a trustee for the wards."

The case of *Duncan* v. *Jaudon*, 15 Wall. (82 U. S.), 165, is directly in point. The discussion given in the opinion of the court is quite apropos of the case at bar, but we content ourselves with quoting the syllabus, which is as follows:

"1. When the trustees under a will, in making investments, depart from the rule prescribed by the testator, the right of action for the *cestui que* trust for an illegal disposition of the property thus substituted is not affected by reason of this departure.

"2. Where a trustee holding stock, declared on its face to be in trust for his *cestui que* trust, pledged the same for a loan of money to himself, the *cestui que* trust may compel the lender to pay the proceeds of such stock as pledged and sold by him.

"3. The party taking such stock on pledge, deals with it at his peril; for there is no presumption of a right to sell it, as there is in the case of executor.

"4. Notice of the trust communicated to the cashier of the lender when he received the stock binds the lender."

Attention is also called to the case of *Shaw* v. *Spencer*, 100 Mass., 382, one paragraph of the syllabus being as follows:

"If a certificate of stock expressed in the name of 'A. B.,' trustee, is by him pledged to secure his own debt, the pledgee is by the terms of the certificate put on inquiry as to the character and limitations of the trust, and if he accepts the pledge without inquiry, does so at his peril."

The nearest case, however, that has been cited to the case at bar, is that of *Covington* v. *Anderson*, 16 Lea (84 Tenn.), 310. This case also involved a sale of bonds by a trustee under circumstances which gave notice to the purchaser of a violation of trust. The syllabus is as follows:

"1. If one acting as trustee convert the trust property without authority, he is responsible, and he who purchases from him, or aids in the conversion, with a knowledge of the want of authority, or under circumstances that will reasonably put one upon inquiry as regards the authority to sell or convert, is also liable.

"2. Whatever is sufficient to put one upon inquiry is notice of all the facts which would be discovered by a faithful prosecution of such inquiry."

This case has been cited with approval in several of the later cases, and must be regarded by us as authority in this case.

Defendant purchased these bonds with due notice that it was buying from a trustee. No authority had been shown in him to make the sale, nor did defendant show that it made any proper inquiry to ascertain whether such authority existed. True, the bank paid full value for the bonds and was in no way in collusion with the trustee in committing a breach of his trust. But it permitted the proceeds of the bonds to be placed in its bank to the individual credit of Santmyer and then paid them out on his individual checks. While ordinarily it would not be permitted to supervise the expenditure of a trust fund deposited in its bank (*Morse on Banks & Banking*, Section 317), under the circumstances of the case it might have saved itself, even

after its purchase, by refusing to pay out the proceeds of said bonds for other than the purposes of said trust. Not having done so it in that manner made possible the defalcation. Having thus become the purchaser of the bonds from the trustee without authority in him to make the sale, the beneficial owner or his new trustee as his representative would have the right to reclaim the bonds, or, as they had been sold, to compel an account for their value or proceeds. The surety company having, however, made good Santmyer's defalcation and paid, the trustee of the beneficiary thus became subrogated to his rights, and by virtue of such subrogation became entitled to recover from defendants the amount of the value or proceeds of said bonds.

However, it is contended by defendant and was held by the court below (12 N.P.[N.S.], 193), that the bonding company was barred by the six-year statute of limitations. There is no question that at the time of the commencement of the action March 29, 1901, the original plaintiff, John C. Healy, trustee, was the real party in interest. On August 26, 1901, the bonding company paid to Healy, trustee, the amount of Santmyer's defalcation and was then subrogated to all the rights and claims of Healy, trustee, and might then have been substituted for him as plaintiff in this case. Such substitution was not in fact made, however, until February 13, 1909.

The court below held that the statute of limitations began to run on the date of such payment by the bonding company when its claim first arose, and that its action could not be considered as brought until it was formally brought into the case and substituted as plaintiff. In other words, that the payment to Healy, trustee, by the bonding company terminated his action, and the action of the bonding company was not begun until it had secured the entry substituting it as plaintiff.

Such holding disregards entirely the provisions of Section 11261, General Code (then R. S. 5012):

"An action shall not abate by the marriage of a female who is a party, but if it is necessary that the husband be joined therein, he may be made a party with her. Upon the disability

of a party, the court may allow the action to continue by or against his representative or successor in interest. On any transfer of interest the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted for him.''

This section has been construed in *Lowry* v. *Anderson*, 57 O. S., 179, of which the following is the syllabus:

''Upon the transfer of a plaintiff during the pendency of an action, of all his interest therein, the action may proceed in the name of such plaintiff, or the court may allow the person to whom the transfer is made to be substituted; but such transfer is no defense to the action.''

The cause of action did not abate because of the payment to Healy, trustee, by the bonding company but continued to exist in favor of the bonding company by subrogation. Under this statute as so construed such company might have been substituted as plaintiff at once, or the action might proceed in the name of Healy, trustee, the original plaintiff for the benefit of the bonding company. The action did so proceed in the name of the original plaintiff until the defendant became advised of the payment, when the bonding company was substituted as such plaintiff.

As has been stated in passing on the motion to dismiss the petition in error, this substitution was by inadvertence made in the original name of the bonding company instead of the name it then bore, but as we have found it was the same identical corporation with only a changed name, that error in name was not important.

The claim against the defendant was not changed in any respect. The substitution when made related back to the beginning of the action, or, as to the interest of the bonding company, back to the time of its payment of the debt of its principal to Healy. Such payment did not operate as an abatement of the action which continued to proceed as was authorized by statute in the name of the original plaintiff. The substitution of the

bonding company did not bring in any new cause of action nor create any new defense for defendant which did not previously exist. It could make no possible difference to defendant in which name the action proceeded, unless it might perchance have some set-off or counterclaim against the bonding company, and in that event, as it filed an amended answer after the substitution it had ample opportunity to have offered any such defense.

Defendant urges, however, that the decision in *Lowry* v. *Anderson*, 57 O. S., 179, had been modified and distinguished by the several cases reported together under the name of *Insurance Co.* v. *Carnahan*, 63 O. S., 258, and for that reason can not be regarded as authority here. We fail to agree with this contention. In some of the cases in *Insurance Co.* v. *Carnahan* it was found that the rights of the plaintiffs had been assigned before the commencement of the action, and that the action was therefore not brought in the name of the real party in interest. The actions were all brought by a partnership in the firm name and during their pendency one of the partners died and there was no proper revivor or substitution of the representative or successor in interest in place of the partnership. It was therefore held that the action was in abeyance and could not proceed. The case does not go to the extent of abrogating the provision of Section 11261, General Code, for a continuance of the action in the name of the original party where transfer of interest is made after the commencement of the suit, nor can the fourth proposition of the syllabus as claimed by counsel for defendant be so construed.

Its proper construction is rather that where an assignment had been made before suit it must be commenced in the name of the assignee, and when made after suit and revivor becomes necessary such revivor should be made in the name of the assignee.

On page 268 of the opinion the court say:

"The case of *Lowry* v. *Anderson*, 57 O. S., 179, does not apply here. The point of that decision was that the transfer of interest, pending the suit, was no *defense* to the action, and

that was the only point decided in the case. It was expressly stated in the opinion that the assignee might be substituted for the original plaintiff. The case does not touch the point which arises here, viz.: that the actions were not begun or prosecuted in the name of the real party in interest.''

In this case there is no dispute that Healy, trustee, was the real party in interest at the commencement of the action, that the action never abated, that it properly proceeded in the name of the original plaintiff until the bonding company was afterwards substituted as plaintiff under authority of Section 11261, General Code. The action was never in abeyance and never abated. Under such a state of facts there can be no defense of the statute of limitations.

As an illustration of the power of the court in furtherance of justice to substitute a party plaintiff and that such substitution relates back to the original commencement of the action, and might possibly thus prevent the intervening of the statute of limitations, attention is called to the recent case of *VanCamp* v. *McCully, Trustee*, 89 O. S., 1, 8.

In Nebraska, where Section 45 of the code is similar in its terms to our Section 11261, General Code, it was held in *Schaberg* v. *McDonald*, 60 Neb., 493:

''Under the provisions of Section 45 of the code a party may continue as plaintiff in an action and prosecute the same to final judgment, after he has transferred to another (and during the pendency of the action) his interest in the subject of the controversy.''

In *Chicago & N. W. R. Co.* v. *Jenkins*, 103 Ill., 588, the syllabus in part is as follows:

''3. The bringing of a suit is the issuing of a summons or other process to bring the defendant into court. The substitution of the assignee of a bankrupt as plaintiff in a suit, is not to be regarded as the commencement of the suit by the assignee, within the meaning of the United States statute limiting such actions to two years after the assignee's appointment. *   *   *

"4. The statute of the United States limiting the bringing of suits by the assignee of a bankrupt within two years from the time of his appointment, was designed only to apply to suits brought by him and not actions already pending in which he may be substituted as plaintiff, although such substitution may be more than two years after his appointment.   *   *   *

"6. The statute of limitations does not run against a cause of action after a suit thereon is commenced, and during its pendency, and numerous cases hold that the mere commencement of a suit without service within the statutory period, will prevent the statute from becoming a bar."

Nor is the case of *Jenkins* v. *International Bank*, 106 U. S., 571, contrary to this rule, as contended by counsel for defendant in error. It holds that the statute of limitations prevents an assignee in bankruptcy from bringing error proceedings after two years (such being the limitation for bringing an action in bankruptcy) following the Illinois Supreme Court in holding that a writ of error was the beginning of a new suit.

For further illustrations of the rule that the substitution of a party plaintiff relates back to the commencement of the suit, see: *Lilly* v. *Tobein*, 103 Mo., 477; *Ludwig* v. *Ins. Co.*, 108 Ill., 514; *McLaughlin* v. *Barnes*, 18 C. C., 623, aff. 57 O. S., 632.

Where one of two parties plaintiff was omitted in an amended petition and the action proceeded with but one plaintiff, the general rule is thus stated in 25 Cyc, 1303:

"Where substitution of plaintiff by amendment does not in fact change the claim or cause of action, such amendment relates back to the commencement thereof, and stops the running of the statute of limitations at that point."

The court below, therefore, erred in holding that the statute of limitations prevented recovery by the substituted plaintiff, but said court should have entered a judgment in favor of such plaintiff for the amount of proceeds of said bonds, with interest from the date of their sale.

The judgment below will therefore be reversed, and a judgment may be entered here for the plaintiff in error.